1  Beth E. Terrell, CSB #178181
   Email: bterrell@tmdwlaw.com
2  Michael D. Daudt, CSB #161575
   Email:  mdaudt@tmdwlaw.com
3  Mary B. Reiten, CSB #203412
   Email:  mreiten@tmdwlaw.com
4  Whitney B. Stark, CSB #234863
   Email:  wstark@tmdwlaw.com
5
6  TERRELL MARSHALL DAUDT
     & WILLIE PLLC
7  936 North 34th Street, Suite 300
8  Seattle, Washington  98103-8869
   Telephone:  (206) 816-6603
9  Facsimile:  (206) 358-3528

10

11 [Additional counsel appear on signature page]

12 *Attorneys for Plaintiffs*

13                 UNITED STATES DISTRICT COURT
14           FOR THE SOUTHERN DISTRICT OF CALIFORNIA

15

16 BEE, DENNING, INC., d/b/a              NO. 3:13-cv-02654-BAS-WVG
   PRACTICE PERFORMANCE
17 GROUP; and GREGORY CHICK,             **PLAINTIFFS' MOTION FOR**
   individually and on behalf of all others **CLASS CERTIFICATION**
18 similarly situated,
                                          Complaint Filed:  11/5/13
19              Plaintiffs,
                                          DEMAND FOR JURY TRIAL
20       v.
                                          Honorable Cynthia Bashant
21
   CAPITAL ALLIANCE GROUP; and            DATE:  October 20, 2014
22 NARIN CHARANVATTANAKIT,               TIME:   10:30 a.m.
                                          COURTROOM: 4B, 4th Fl. Schwartz
23              Defendants.
                                          **NO ORAL ARGUMENT UNLESS**
24                                        **REQUESTED BY THE COURT**

25

26

27                                    PLAINTIFFS' MOTION FOR CLASS
                                             CERTIFICATION
28                                       3:13-cv-02654-BAS-WVG

# TABLE OF CONTENTS

**Page No.**

I.      INTRODUCTION ...................................................................................1

II.     STATEMENT OF FACTS ....................................................................2

     A.     Defendants Market Fast, Short-Term Loans to Small
         Businesses ....................................................................................2

     B.     Defendants' Vendor Sent Hundreds of Thousands of
         Unsolicited Junk Faxes Advertising Their Services to
         Potential Customers.....................................................................4

     C.     Defendants Failed to Include Statutorily Required Opt-Out
         Language on their Junk Faxes and Failed to Honor Opt-Out
         Requests That They Received ......................................................7

     D.     Defendants Placed Unlawful Robocalls to Potential Borrowers  ....8

     E.     Defendants' Unlawful Activities Have Continued Even After
         the Indiana Attorney General Caught Them .......................................9

     F.     Relevant Procedural History .....................................................10

III.    STATUTORY BACKGROUND OF THE PROPOSED CLASSES .........12

IV.     ARGUMENT AND AUTHORITY .......................................................14

     A.     The Standards for Class Certification are Met..................................14

         1.     Numerosity is Met................................................................16

         2.     Numerous Common Issues Exist...........................................16

         3.     The Typicality Standard is Met ............................................18

4.      The Named Plaintiffs and Their Counsel Will
        Fairly and Adequately Protect the Interests of the
        Class ......................................................................... 19

5.      Rule 23(b)'s Requirements Are Met ........................ 19

        a.      Common questions of law and fact predominate ......... 22

        b.      No Individualized Defenses Exist ................................. 23

        c.      The class action is a superior method for the
                adjudication of this controversy ................................. 23

B.      Constitutionally Sound Notice Can Be Provided to Class
        Members ......................................................................... 24

V.      CONCLUSION ......................................................................... 25

# TABLE OF AUTHORITIES

**Page No.**

## FEDERAL CASES

*Abdullah v. U.S. Sec. Assoc., Inc.*,
  731 F.3d 952 (9th Cir. 2013) ........................................................17

*Agne v. Papa John's Int'l, Inc.*,
  286 F.R.D. 559 (W.D. Wash. 2012) ..............................................16

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds*,
  —— U.S. ——, 133 S.Ct. 1184 (2013) .........................................14

*Arnold Chapman and Paldo Sign & Display Co. v. Wagener Equities, Inc.*,
  747 F.3d 489 (7th Cir. 2014) .........................................................14

*Bateman v. Am. Multi-Cinema, Inc.*,
  623 F.3d 708, 712 (9th Cir. 2010) .................................................14

*Birchmeier v. Caribbean Cruise Line, Inc.*,
  -- F.R.D. --, 2014 WL 3907048 (N.D. Ill. Aug. 11, 2014).............15

*Butler v. Sears, Roebuck & Co.*,
  727 F.3d 796 (7th Cir. 2013) .........................................................20

*CE Design v. Beaty Const., Inc.*,
  07 C 3340, 2009 WL 192481 (N.D. Ill. Jan. 26, 2009)..................18

*CE Design Ltd. v. Cy's Crabhouse North, Inc.*,
  259 F.R.D. 135 (N.D. Ill. 2009) ....................................................15

*Celano v. Marriott Int'l Inc.*,
  242 F.R.D. 544 (N.D. Cal. 2007) ..................................................16

*Chamberlan v. Ford Motor Co.*,
  402 F.3d 952 (9th Cir. 2005) .........................................................20

*City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*,
    296 F.R.D. 299 (D. N.J. 2013) ...................................................................14

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
    No. 07 C 5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009) ...................25

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...................................................................17

*Hanon v. Dataprods. Corp.*,
    976 F.2d 497 (9th Cir. 1992) .....................................................................18

*Hawk Valley, Inc. v. Taylor*,
    --- F.R.D. ---, Case No. 10-cv-00804, 2014 WL 1302097
    (E.D. Penn. March 31, 2014)...........................................................14, 22, 23

*Heastie v. Cmty. Bank of Greater Peoria*,
    125 F.R.D. 669 (N.D. Ill. 1989) ................................................................16

*Hinman v. M and M Rental Ctr.*,
    545 F. Supp. 2d 802 (N.D. Ill. 2008)........................................................15

*Holloway v. Full Spectrum Lending*,
    CV 06-5975 DOC RNBX, 2007 WL 7698843 (C.D. Cal.
    June 26, 2007)............................................................................................23

*In re Rubber Chem. Antitrust Litig.*,
    232 F.R.D. 346 (N.D. Cal. 2005) ..............................................................16

*Jimenez v. Allstate Ins. Co.*,
    --- F.3d ---, 2014 WL 4338841 (9th Cir. Sept. 3, 2014) .................14, 17, 20

*Kavu v. Omnipak Corp.*,
    246 F.R.D. 642 (W.D. Wash. 2007).................................................15, 16, 18

*Knutson v. Schwan's Home Serv., Inc.*,
    No. 3:12-cv-0964, 2013 WL 4774763 (S.D. Cal. Sept. 5, 2013)...............16

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION
iv                           3:13-cv-02654-BAS-WVG

*Kristensen v. Credit Payment Servs.*,
    --- F. Supp. 2d ---, 2014 WL 1256035 (D. Nev.
    March 26, 2014) .........................................................................17, 21, 22

*Lerwill v. Inflight Motion Pictures*,
    582 F.2d 507 (9th Cir. 1978) ........................................................19

*Manno v. Healthcare Revenue Recovery Grp., LLC*,
    289 F.R.D. 674 (S.D. Fla. 2013) ..................................................15

*Mims v. Arrow Fin. Servs., LLC*,
    --- U.S. ---, 132 S. Ct. 740 (2012) ..............................................12

*Mitchem v. Ill. Collection Serv., Inc.*,
    271 F.R.D. 617 (N.D. Ill. 2011) ...................................................15

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) .....................................................................24

*Murray v. GMAC Mortg. Corp.*,
    434 F.3d 948 (7th Cir. 2006) ........................................................23

*Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*,
    281 F.R.D. 327 (E.D. Wis. 2012) .................................................15

*Siding and Insulation Co. v. Beachwood Hair Clinic, Inc.*,
    279 F.R.D. 442 (N.D. Ohio 2012) ................................................15

*Silbaugh v. Viking Magazine Serv.*,
    278 F.R.D. 389 (N.D. Ohio 2012) ................................................20

*Smith v. Microsoft Corp.*,
    No. 11-cv-1958 JLS (BGS), 2012 WL 2975712
    (S.D. Cal. July 20, 2012) .............................................................12

*Stern v. DoCircle, Inc.*,
    2014 WL 486262 (C.D. Cal. Jan. 29, 2014)................................17

*Texas v. Am. Blastfax, Inc.*,
    164 F. Supp. 2d 892 (W.D. Tex. 2001) ........................................................22

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ..................................................................23

*Yaakov v. Alloy, Inc.*,
    --- F.Supp.2d ----, 2013 WL 1285408  (S.D.N.Y. March 28, 2013)...........13

## FEDERAL STATUTES

47 U.S.C. § 227 (a)(5)................................................................................*Passim*

47 U.S.C. § 227 (b) ..................................................................................*Passim*

## FEDERAL RULES

47 CFR 64.1200(a)(3) ...............................................................................*Passim*

Fed. R. Civ. P. 23(a) .................................................................................*Passim*

Fed. R. Civ. P. 23(b) .................................................................................*Passim*

Fed. R. Civ. P. 23(c)(2)........................................................................................24

# I. INTRODUCTION

Defendants Capital Alliance Group ("Capital Alliance") and Narin Charanvattanakit ("Narin") (together "Defendants") systematically violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 by inundating small business owners with hundreds of thousands (if not millions) of unsolicited junk faxes and robocalls advertising their services as a small business loan broker. Defendants tried to disguise their unlawful conduct by using various aliases and call-forwarding technology to make it appear as if the solicitations were coming from different companies.

Named Plaintiffs Plaintiffs Bee, Denning, Inc. ("Bee") and Gregory Chick ("Chick") were subjected to Defendants' unlawful marketing practices and they were not alone.  Seven small business owners have stepped forward to provide declarations echoing Plaintiffs' complaints about Defendants' unlawful acts. Furthermore, Defendants' deposition testimony, discovery responses, and data received from third-party service providers reveal that hundreds of thousands of small business owners have been affected.

Plaintiffs seek to have this case certified as a class action pursuant to Fed. R. Civ. P. 23(b)(3) so the claims of hundreds of thousands of Class members can be resolved in one fair and efficient proceeding.  Certification is appropriate because the numerous questions of law and fact common to all proposed class members predominate over any individualized issues.  Moreover, Plaintiffs' claims and the claims of the proposed class members arise out of a common nucleus of operative facts: Defendants' unlawful marketing practices.

For these reasons, Plaintiffs respectfully request that the Court certify the case as a class action, appoint Bee and Chick as class representatives, appoint

1  Terrell Marshall Daudt & Willie PLLC as class counsel, and authorize sending
2  notice to the classes.

### II. STATEMENT OF FACTS

**A.    Defendants Market Fast, Short-Term Loans to Small Businesses**

Defendants Capital Alliance and Narin match investors (lenders) with small businesses seeking loans.  Ex. 1 (Narin Dep.) at 13:14–14:11).[1]  Capital Alliance promises a "quick and simple" way for small businesses to get cash. Ex. 2.  Capital Alliance funds loans quickly, sometimes within a week of receiving an application.  *Id.* at 51:10–15.  The loans are generally unsecured and collect interest at rates higher than typical credit card interest of 12% to 14%.  *Id.* at 51:16–25.  Defendants employ forty-seven sales people, all of whom primarily field inbound phone calls from prospective borrowers.  *Id.* at 21:15-25.

Defendants retained vendor Absolute Fax to solicit business through junk fascimiles.  Exs. 4, 5 (Discovery Responses) at 6:19–25; Ex. 1 (Narin Dep.) at 38:6–15, 40:16–41:24. Absolute Fax touts itself as a "global fax broadcast provider."  Ex. 6.  Absolute Fax emphasizes that it "focuses on fax marketing and nothing else."  *Id.*  According to Narin, Absolute Fax is the only fax vendor Defendants retained to generate leads.  Ex. 1 (Narin Dep.) at 38:6–15.

Capital Alliance also engages in mass telemarketing, using an autodialer to send prerecorded advertisements to millions of prospective customers.  Ex. 1 (Narin Dep.) at 22:22–23:2, 28:21–29:9, 30:10–31:23, 32:14–23.  Defendants paid Message Communications "for marketing leads" generated through robocalling campaigns.  Exs. 4, 5 (Discovery Responses) at 6:19–25.  Message

---

[1] Unless otherwise noted, all exhibits are attached to the Declaration of Mary B. Reiten in Support of Motion for Class Certification ("Reiten Decl.").

1  Communications is a telemarketing company that makes automated calls and
2  leaves prerecorded messages. Ex. 7.

3          Defendant Narin is heavily involved in Capital Alliance's operations,
4  including its junk fax and telemarketing activities.  The CEO of Capital Alliance,
5  Narin manages daily operations, directs sales activities and motivates Capital
6  Alliance's employees.  Ex. 1 (Narin Dep.) at 12:19 – 20:3, 15:6–7.  Narin's
7  personal involvement extends to Capital Alliance's use of junk faxing and
8  robocalling to solicit new business.  Indeed, according to Capital Alliance
9  Operations Manager Christina Duncan, Narin is the person at Capital Alliance
10 who knows the details regarding Capital Alliance's junk fax and telemarketing
11 efforts.  *See* Ex. 3 at 19:2–11 (testifying that Narin probably would know who the
12 company uses for fax marketing), 20:2–5 (testifying that Narin would be the
13 person who had the final say over whether or not to use faxes as a marketing
14 tool).

15         Narin was the point person at Capital Alliance regarding the company's
16 junk fax marketing efforts.  He hired Absolute Fax and communicated with it
17 regarding their relationship and payment instructions.  Ex. 1 (Narin Dep.) at 38:6–
18 39:6. He personally instructed Absolute Fax to generate leads for Capital
19 Alliance.  *Id.* at 40:16–20.  And he personally investigated whether Absolute Fax
20 complied with the law.  *Id.* at 43:13 – 44:15.

21         Narin was also the point person regarding Capital Alliance's robocalling
22 telemarketing campaigns.  He hired Message Communications to robocall on
23 behalf of Capital Alliance to generate business.  Ex. 1 (Narin Dep.) at 29:1-9.
24 Once Message Communications was hired, he personally placed orders with the
25 company for robocalling and arranged payment for its services.  *Id.* at 28:21 –
26 31:25.  Narin also personally provided the content for the prerecorded messages

27
28

used by Message Communications.  *See id.* at 31:8–23 (Narin testifying that he personally told Message Communications what the content of prerecorded messages advertising Defendants' product should include).  He also personally consulted with Message Communications regarding its TCPA compliance.  *See id.* at 32:14 – 34:4.

**B.   Defendants' Vendor Sent Hundreds of Thousands of Unsolicited Junk Faxes Advertising Their Services to Potential Customers**

Defendants have sent hundreds of thousands of junk faxes to small business owners, soliciting their business.  The faxes advertise "fast and simple" short term business loans and encourage the fax recipient to use a toll-free number to "CALL NOW TO SPEAK WITH A FINANCIAL SPECIALIST."  *See, e.g.,* Ex. 8.

### SHORT TERM BUSINESS LOAN – FAST AND SIMPLE

Time is money. We offer a <u>fast and simple</u> alternative to traditional bank financing. Our cutting edge technology allows us to approve loans quickly and get you the capital to push your business forward.

| Loan Size | $5,000.00 - $250,000.00 |
|---|---|
| Terms | 6-18 months |
| Security | No collateral needed |
| Timing | Approval in 24 hours; Funding in 2 business days |
| Qualifications | Min. 500 credit score; At least 1 year time in business |
| Details | *True* Business Loan; *NOT* a Merchant Cash Advance |

CALL NOW TO SPEAK WITH A FINANCE SPECIALIST:     1-800-950-4042

Capital Alliance is not identified on these faxes.  Instead, Capital Alliance uses a number of "aliases" to disguise the fact that Capital Alliance has caused the fax to be transmitted.  *See* Reiten Decl. ¶ 12.  These aliases include "Community," "Community Business Funding," "Fast Working Capital," "Snap Business Funding," "Zoom Capital," "Nextday Business Loans," "3DayLoans," "Bank Capital," "FundQuik," "Prompt," and "Simple Business Funding."  *Id.*

Despite the disguise, the faxes sent using these names are easily traceable to Capital Alliance.  For example, during the spring and summer of 2014 attorney

Lawrence Longfelder received multiple unsolicited faxes advertising "preapproved" business loans. Longfelder Decl. ¶ 4. One of the faxes that Mr. Longfelder received advertised preapproved loans from a company purporting to be called "Prompt." *Id.* ¶ 5, Ex. 1. Mr. Longfelder's wife suffers from brain cancer, which requires costly treatment. *Id.* ¶ 6. To defray expenses associated with her treatment, Mr. Longfelder decided to apply for a loan and called the toll-free number identified on the fax. *Id.* Mr. Longfelder spoke to a person who identified himself as a Capital Alliance representative. *Id.* ¶ 7. After the call, a Capital Alliance representative emailed him a loan application. *Id.* ¶ 7, Ex. 3.

Small business owner Linda Snavely had a similar experience. Ms. Snavely's business "Linda's Gardening and Hydroponics" received multiple faxes advertising "preapproved" business loans. Snavely Decl. ¶ 4. One of the unsolicited faxes was from a company purporting to be called "Snap Business Funding." *Id.* ¶ 5, Ex. 1. Snavely called the toll-free number identified on the fax and spoke with a person who identified himself as an employee of Capital Alliance and who preapproved her for a loan. *Id.* ¶ 7. After the call, Ms. Snavely received multiple communications from Capital Alliance. *Id.* ¶¶ 7–8.

Plaintiff Bee also received multiple faxes advertising "fast and simple" short term business loans. Exs. 8-10. Two of the faxes purported to be from a company called "Community." *Id.* The third fax was from a company purporting to be called "Community Business Funding." Ex. 9. Plaintiff Bee did not want a loan so she did not call the toll-free number listed on the fax. Instead, she complained to the National Do Not Call Registry ("NDNC Registry"). Ex. 11 (Bee Dep.) at 26:2-22. Plaintiffs' counsel, however, subpoenaed records from toll-free number service provider "Phone.com." Those records show that calls placed to the toll-free numbers listed on the faxes Plaintiff Bee received were

forwarded directly to Capital Alliance.  Hoover Decl. ¶ 10.  For example, the toll-free number (800) 950-4042 was automatically forwarded to the number (949) 238-6608, which would be answered by Desiree Pinkney, whom Defendants admit is a Capital Alliance employee.  Ex. 1 (Narin Dep.) at 28:6-11; Ex. 3 (Duncan Dep.) at 31:6-11.

Small business owners Carol Minto, Dan Kaufman, David Doud, George Mitchell, and Clyde L. Griffey all were victims of the same scheme.  All received multiple faxes advertising business loans and encouraging the business owners to call a toll-free number.  *See* Minto Decl. ¶ 4; Kaufman Decl. ¶ 4; Doud Decl. ¶ 4; Mitchell Decl. ¶ 4; Griffey Decl. ¶ 4.  Although the faxes purported to have been sent by different companies, the faxes the business owners received were nearly identical, with similar formatting, style, logo design, and text.  Minto Decl. ¶¶ 5–6, Exs. 1–2 (indicating faxes were received from "Prompt," "Snap Business Loans," and "Nextday Business Loans"); Kaufman Decl. ¶¶ 5–24, Exs. 1–5 (indicating faxes received from "Bank Capital," "Simple Business Funding," "Community Business Funding," "Prompt," "FundQuick," "3 Day Loans," "Snap Business Funding," "Nextday Business Loans," and "Zoom Capital"); Doud Decl. ¶¶ 5–10, Ex. 1–6 (indicating faxes received from "Bank Capital," "Fast, Working Capital," "Community Business Funding," "Zoom Capital," "3DayLoans," and "Snap Business Loans");  Mitchell Decl. ¶¶ 5–14, Exs. 1–4 (indicating faxes received from "FundQuick," "Snap," "Snap Business Loans," and "NextDay Business Loans"); Griffey Decl. ¶¶ 5–7, Ex.1 (indicating fax received from "Nextday Business Loans").  The majority of the toll-free phone numbers listed in the faxes can be traced to Capital Alliance.  *See* Hoover Decl. ¶¶ 8-9.

Defendants' unlawful marketing scheme was not limited to Plaintiff Bee and the declarants. Records indicate that at least 450,000 small business owners received faxes that have been traced to Capital Alliance. *See generally* Hoover Decl.

## C. Defendants Failed to Include Statutorily Required Opt-Out Language on their Junk Faxes and Failed to Honor Opt-Out Requests That They Received

All of the faxes Defendants sent contain language suggesting that the recipient may opt out from receiving faxes. For example, the fax that Plaintiff Bee received states: "No longer interested? Please visit thefaxremovalservice.com or call 877 870 6427 to be removed." *See* Exs. 8-10. Faxes received by other class members contain similar language. *See*, Snaveley Decl., Ex. 1; Longfelder Decl., Ex. 1; Minto Decl., Ex. 1; Kaufman Decl., Ex. 1; Doud Decl., Ex. 3; Mitchell Decl., Ex. 1; Griffey Decl., Ex. 1. However, the opt out language does not identify the sender of the faxes (i.e. Capital Alliance). Neither is it clear and conspicuous as it appears in tiny font at the bottom of each fax. And finally, the notice does not state that failure to comply with such a request is unlawful as required by 47 U.S.C. §227(b)(2)(D)(ii).

Capital Alliance ignored consumers' requests to opt out in any event. Operations manager Christina Duncan testified that Capital Alliance does not maintain a list of potential customers who opted out from receiving unsolicited junk faxes. Ex. 3 (Duncan Dep.) at 28:24–29:6. And, the experiences of Class members confirm that Capital Alliance failed to honor do-not-fax requests. Carol Minto, for example, called the number listed on one of the junk faxes she received and told the person who answered "that his company was sending [her] unsolicited faxes regarding business loans, that [she] was not interested in

receiving a business loan, and that [she] would like to be removed from the list." Minto Decl. ¶ 7. Ms. Minto told the person who answered the phone that "based on the number of faxes [she] received advertising business loans" she "felt as though [she] was being harassed." *Id.* Ms. Minto was told that she "would be removed from the list." *Id.* Despite this representation, the faxes continued. *Id.* ¶¶ 8–10. Ms. Minto again called the number listed on the fax and again told the person who answered that she wanted them to stop. *Id.* ¶ 9 ("I told the representative that based on the number of faxes I received advertising business loans, I felt as though I was being harassed"). Still the faxes continued. *Id.* ¶ 10. Ms. Minto received so many unsolicited faxes that she has removed the paper from her fax machine and "now ask[s] [her] business contacts to notify [her] in advance of their intent to send faxes to Minto Court Reporting." *Id.* ¶ 11. "Only then does [she] stock the fax machine with paper." *Id.*

Class member after Class member have testified that they attempted to opt out from receiving faxes but continued to receive unwanted faxes. *See, e.g.*, Kaufmann Decl. ¶¶ 19–20 (testifying he called the toll-free opt out number, "pressed nine to opt out of receiving faxes" but still continues to receive "numerous faxes advertising fast and simple business loans"); Doud Decl. ¶¶ 11–12 (testifying he called the toll-free number to try to opt out from receiving faxes, was told he would be removed from the list, but continues to receive unsolicited faxes); Mitchell Decl. ¶¶ 10–12 (testifying he tried to opt out but continues to receive faxes advertising "fast and simple" short term business loans); Griffey Decl. ¶¶ 6–7 (testifying he tried to opt out but still receives faxes).

**D.    Defendants Placed Unlawful Robocalls to Potential Borrowers**

In addition to sending junk faxes to obtain business, Defendants also engage in illegal robocalling. Ex. 1 (Narin Dep.) at 29:1-31:23. For example, on

December 6, 2013, Plaintiff Chick received a telephone call with a prerecorded message about preapproval for a business loan and wrote the telephone number down on a log he was keeping at the time: (888) 364-6330.  Ex. 12 (Chick Dep.) at 28:9–30:19.  When one calls (888) 364-6330 a representative from Capital Alliance answers.  Hoover Decl. ¶ 9.  Moreover, call records indicate that calls placed to (888) 364-6330 were forwarded to various Capital Alliance sales employees, including Desiree Pinkney, Tre Robertson, Jon Clark, and Pam Bromley.  *See* Ex. 3 (Duncan Dep.) at 31:6–11, 15:22–36:14 (confirming that these employees were employed at Capital Alliance and dealt primarily with inbound sales calls); *see also* Hoover Decl. ¶ 8, 19.

**E.     Defendants' Unlawful Activities Have Continued Even After the Indiana Attorney General Caught Them**

In March 2013, the Indiana Attorney General sued Capital Alliance and Narin for violating Indiana's state law prohibiting unsolicited junk faxes.  Ex. 13.  The complaint alleged that Capital Alliance used the aliases BankCapital, BankCapital Direct, and Trusted Bankcorp and Narin used the alias "Clayton Heath" to perpetuate their unlawful marketing scheme.  *Id.* ¶ 3.  Capital Alliance and Narin settled the Indiana lawsuit in August 2013.  As part of the settlement Defendants agreed to the entry of a consent decree requiring Capital Alliance to cease soliciting clients in Indiana. Defendants also agreed to pay $40,000.  Ex. 1 (Narin Dep.), Ex. 4.

Defendant Narin testified that Capital Alliance stopped sending junk faxes after the Indiana consent decree was entered in August 2013.  Ex. 1 (Narin Dep.) at 66:1–67:8.  The evidence indicates otherwise.  Ms. Duncan testified on August 4, 2014 that Capital Alliance continues to solicit customers by sending junk faxes.  Ex. 3 (Duncan Dep.) at 14:18–25; 19:24–20:1.  In addition, Class members

received unsolicited junk faxes as recently as this summer. *See, e.g.*, Longfelder Decl. ¶ 4; Snaveley Decl. ¶ 4. Analyzing the relevant calling records reveals that since June 2013 Capital Alliance has sent junk faxes to at least 450,000 Class members. Hoover Decl. ¶ 27. There is simply no doubt that Capital Alliance continues to use junk faxes to solicit business.

**F.   Relevant Procedural History**

On November 5, 2013, Plaintiff Bee filed this class action lawsuit against Capital Alliance Group. Dkt. No. 1. Plaintiff Bee amended her complaint one month later. Dkt. No. 6 ("Amended Complaint"). In their Amended Complaint, Plaintiffs Bee and Chick seek to certify two classes, a Facsimile Class and an Automated Call Class defined as:

> <u>Facsimile Class</u>: All persons or entities in the United States who, on or after four years before the filing of this action, received one or more unsolicited facsimile messages containing an advertisement that was made by or on behalf of Defendants or its agents or affiliates, with whom Defendants did not have an established business relationship or with whom Defendants did not obtain express prior consent to send a fax.

> <u>Automated Call Class</u>: All persons or entities in the United States who, on or after four years before the filing of this action, received a call on their cellular telephone line with a pre-recorded message, made by or on behalf of Defendants, and without the recipient's express prior consent.

*See* Dkt. No. 6 at 7:15–25.

Plaintiffs propounded written discovery seeking, among other things, the identities of persons with information regarding the allegedly unlawful faxes and calls, characteristics of calls and faxes that were placed on Capital Alliance's

behalf, the identities of the recipients of calls and faxes, the identities of any third-party vendors who might have sent the faxes and placed the calls, and information regarding potential affirmative defenses that Defendants might assert. *See* Exs. 4, 5.  In its discovery responses, Capital Alliance disavows an "existing business relationship" defense to the TCPA violations alleged here, stating that it "does not contend that it had a direct business relationship with any person to whom absolutefax.com sent a facsimile." Exs. 4, 5 at 6:6–10.  Likewise, Capital Alliance disavows a "prior express consent" defense, stating that it "does not contend that it received prior express consent from any person to whom telephone calls were made by Message Communications." *Id.* at 6:11–14.  Capital Alliance further stated that it "does not contend that it received prior express consent from any person to whom facsimiles were sent by absolutefax.com." *Id.* at 6:15–18.

Plaintiffs' counsel diligently investigated Defendants' unlawful marketing scheme.  Reiten Decl. ¶ 16.  Plaintiffs' counsel took two Fed. R. Civ. Pro. 30(b)(6) depositions.  *Id.*  Plaintiffs' counsel also sent multiple subpoenas to third-party vendors who potentially serviced the toll-free contact numbers as well as the "opt out" numbers listed on the junk faxes.  Hoover Decl. ¶ 4.  As a result of these subpoenas, Plaintiffs have identified at least 559,019 members of the Facsimile Class who received at least 814,187 illegal faxes.  *Id.*  In addition, again through the use of subpoenas to third parties, including phone carriers, Plaintiffs have conservatively identified 33,406 members of the Automated Call Class who received 47,546 robocalls.  *Id.* at 19.  This is a conservative estimate of the number of class members robocalled by Defendants because it only includes those class members who were robocalled by the same toll-free number as Plaintiff Chick.  *Id.*

Through their investigation, Plaintiffs' counsel have identified certain aliases that Capital Alliance used.  Therefore, Plaintiffs' counsel have been able to refine the Class definitions.  Plaintiffs seek to certify Classes defined as:

> Junk Fax Class:  All persons or entities in the United States who, on or after four years before the filing of this action, were sent by or on behalf of Defendants one or more unsolicited advertisements by telephone facsimile machine that bears the business name Community, Community Business Funding, Fast Working Capital, Snap Business Funding, Zoom Capital, Nextday Business Loans, 3DayLoans, Bank Capital, FundQuik, Prompt, or Simple Business Funding.

> Automated Call Class:  All persons or entities in the United States who, on or after four years before the filing of this action received a call on either their cellular or residential telephone line with a prerecorded message from 888-364-6330 that was made on or on behalf of Defendants.

## III. STATUTORY BACKGROUND OF THE PROPOSED CLASSES

Congress enacted the TCPA, 47 U.S.C. § 227 to protect individual consumers from receiving intrusive and unwanted telecommunications. *Mims v. Arrow Fin. Servs., LLC*, --- U.S. ---, 132 S. Ct. 740, 745 (2012).  In keeping with its remedial purpose, the TCPA provides for statutory damages. A plaintiff need not suffer an economic injury to state a claim under the TCPA.  *Smith v. Microsoft Corp.*, No. 11-cv-1958 JLS (BGS), 2012 WL 2975712, at *6 (S.D. Cal. July 20, 2012).

The TCPA strictly regulates, but does not bar, advertisement via facsimile. *See* 47 U.S.C. §227.  Advertisement via facsimile is lawful if (1) the "prior express permission" of the facsimile recipient has first been obtained, or (2) there

is an "established business relationship" ("EBR") between the entity whose goods are being advertised, and the facsimile recipient.  47 U.S.C. §227 (a)(5); 47 U.S.C. §227 (b)(C).  A telemarketer, however, can only assert an EBR defense if it has included a compliant "Opt Out Notice," on its Junk Faxes.  *See* 47 U.S.C. §227(b)(C)(i-iii) (EBR defense only applicable where Opt Out Notice has been provided to facsimile advertisement recipients); 47 CFR 64.1200(a)(3)(iii-v).  Junk Faxes must include clear and conspicuous language on the first page of the advertisement that states that facsimile recipients may request that the sender not send any future unsolicited advertisements.  The notice must also inform facsimile recipients that the failure to comply with such a request, within the shortest reasonable time as determined by the Commission, is unlawful.  Finally, the notice must also include ***both*** a toll free phone and facsimile number that a recipient may use to submit a request to stop receiving faxes.  *See* 47 U.S.C. §227(b)(D); 47 CFR 64.1200(a)(3)(iii-v).  The failure to include Opt Out Notice on a facsimile advertisement is itself an actionable violation of the TCPA.  *See* 47 U.S.C. §227(b)(3) (providing for a private right of action for violations of any of the requirements of 47 U.S.C. §227(b)).  *See Yaakov v. Alloy, Inc.*, --- F.Supp.2d ----, 2013 WL 1285408 at *8 (S.D.N.Y. March 28, 2013) (Court recognizes that TCPA provides for a private right of action for failure to include opt out notice on facsimile advertisement).

The TCPA also prohibits the initiation of "any telephone call to any residential telephone line using and artificial or prerecorded voice to deliver a message."  47 U.S.C. sec. 227(b)(1)(B).  This prohibition also extends to using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service."  47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to persons who

receive calls in violation of 47 U.S.C. § 227(b)(1)(A) and (B). *See* 47 U.S.C. § 227(b)(3).

## IV. ARGUMENT AND AUTHORITY

**A.    The Standards for Class Certification are Met**

The four prerequisites to class certification are numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). In addition, one of the three conditions of Fed. R. Civ. P. 23(b) must be met. *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010) (citation omitted).

Plaintiffs seek certification under Rule 23(b)(3), which requires that common questions of law or fact predominate and that maintaining the suit as a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3); *see also Erica P. John Fund, Inc. v. Halliburton*, 131 S.Ct. 2179, 2184 (2011). Although in some cases the court may have to "probe behind the pleadings" to determine whether the plaintiffs have met the requirements of Rule 23, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, ⸺ U.S. ⸺⸺, 133 S.Ct. 1184, 1194–95 (2013) (citations omitted); *see also Jimenez v. Allstate Ins. Co.*, --- F.3d ---, 2014 WL 4338841, n. *5 (9th Cir. Sept. 3, 2014).

Courts frequently certify TCPA class actions involving unsolicited faxes. *See, e.g.*, *Arnold Chapman and Paldo Sign & Display Co. v. Wagener Equities, Inc.*, 747 F.3d 489, 490–93 (7th Cir. 2014) (upholding certification of litigation class consisting of all persons who received a facsimile during the defendant's alleged fax blasting); *Hawk Valley, Inc. v. Taylor*, --- F.R.D. ---, Case No. 10-cv-00804, 2014 WL 1302097, at *5, *19 (E.D. Penn. March 31, 2014) (certifying a class of fax recipients sent unsolicited faxes by the defendant); *City Select Auto*

*Sales, Inc. v. David Randall Assocs., Inc.*, 296 F.R.D. 299, 303–04 (D. N.J. 2013) (certifying litigation class comprised of all persons or entities with whom the defendant did not have an established relation and who received an unsolicited facsimile); *Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 281 F.R.D. 327, 339 (E.D. Wis. 2012) (certifying litigation class consisting of all persons who were sent a facsimile offering discounts off books and magazines); *Siding and Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012) (certifying litigation class action consisting of all persons sent a facsimile advertising hair solutions); *CE Design Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135, 143 (N.D. Ill. 2009) (certifying litigation class of persons who received a facsimile advertising the defendant's restaurant); *Hinman v. M and M Rental Ctr.*, 545 F. Supp. 2d 802, 808 (N.D. Ill. 2008) (certifying litigation class consisting of all persons who were sent facsimile advertisements without permission); *Kavu v. Omnipak Corp.*, 246 F.R.D. 642, 645, 651 (W.D. Wash. 2007) (certifying a class of 3,000 fax recipients who received a fax promoting the defendant's summer sale).

Likewise, courts frequently certify automated call classes.  *See, e.g., Birchmeier v. Caribbean Cruise Line, Inc.*, -- F.R.D. --, 2014 WL 3907048, at *13 (N.D. Ill. Aug. 11, 2014) (certifying two litigation classes for automated calls made to either a cellphone or landline that advertised free cruises in exchange for participation in various surveys); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 693 (S.D. Fla. 2013) (certifying a litigation class comprising of all Florida residents who had received an automated telephone call on their cellphone seeking to collect an alleged medical debt); *Mitchem v. Ill. Collection Serv., Inc.*, 271 F.R.D. 617, 620 (N.D. Ill. 2011) (certifying litigation class consisting of all persons who received a prerecorded voice message seeking

to collect debt for medical services on their cellphones); *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 572 (W.D. Wash. 2012) (certifying litigation class of cell phone owners who received text messages promoting the defendant's pizza products); *Knutson v. Schwan's Home Serv., Inc.*, No. 3:12-cv-0964, 2013 WL 4774763, *11 (S.D. Cal. Sept. 5, 2013) (certifying class of persons who received autodialed calls with a prerecorded message on their cell phones).

1.   <u>Numerosity is Met</u>

The numerosity requirement is met when "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1).  To satisfy this requirement, a plaintiff need not demonstrate the exact number of class members, nor is there a particular "magic number" that is required.  *See In re Rubber Chem. Antitrust Litig.*, 232 F.R.D. 346, 350–51 (N.D. Cal. 2005) ("Plaintiffs do not need to state the exact number of potential class members, nor is a specific number of class members required for numerosity.").  Generally, numerosity is satisfied when the class comprises 40 or more members, *Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007), and classes that number in the thousands "clearly" satisfy the numerosity requirement.  *See e.g., Heastie v. Cmty. Bank of Greater Peoria*, 125 F.R.D. 669, 674 (N.D. Ill. 1989); *Kavu,* 246 F.R.D. at  646-47 (finding numerosity requirement satisfied in TCPA junk fax case involving the transmission of 3,000 unsolicited faxes).

Here, there are at least 458,413 members of the Facsimile Class and at least 33,406 members of the Automated Call Class.  Hoover Decl., ¶ 27.

2.   <u>Numerous Common Issues Exist</u>

Rule 23(a)(2)'s commonality requirement "requires that the class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one

stroke." *Jimenez*, 2014 WL 4338841, at *2 (internal marks omitted) (citing cases).  A class satisfies the commonality requirement when the common questions it has raised are "apt to drive the resolution of the litigation."  *Abdullah v. U.S. Sec. Assoc., Inc.*, 731 F.3d 952, 962 (9th Cir. 2013) (quoting *Dukes*, 131 S. Ct. at 2551).  These common issues "may center on 'shared legal issues with divergent factual predicates [or] a common core of salient facts coupled with disparate legal remedies.'"  *Jimenez*, 2014 WL 4338841, at *2 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).

Here, Plaintiffs allege that Defendants retain vendors to bombard Class members with advertising junk faxes and automated telemarketing phone calls without obtaining any consent whatsoever to send the faxes or place the calls. This common core of salient facts gives rise to several legal issues, including whether Defendants' conduct violates TCPA provisions prohibiting companies from sending unsolicited faxes and placing autodialed calls; whether Defendant Narin is directly liable for the faxes sent and calls placed; whether Defendants are vicariously liable for their vendors' conduct; and whether Defendants used an ATDS as defined by the TCPA to place the autodialed calls.  *See Kristensen v. Credit Payment Servs.*, --- F. Supp. 2d ---, 2014 WL 1256035, at *8 (D. Nev. March 26, 2014) (finding vicarious liability issues satisfied commonality because the issue "turns on the federal common law of agency and can arise from actual authority, apparent authority, or ratification" a determination of which will depend either on the defendants' conduct rather than class members); *Stern v. DoCircle, Inc.*, 2014 WL 486262, at *4 (C.D. Cal. Jan. 29, 2014) (finding consent is a legal issue common to all class members). Due to the numerous common questions of law and fact among the proposed class, the commonality requirement is satisfied.

### 3.   The Typicality Standard is Met

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."  *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  "The Ninth Circuit does not require the named plaintiff's injuries to be identical with those of the other class members, but only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same injurious course of conduct."  *Hanon*, 976 F.2d at 666 (quotation and internal marks omitted).

Plaintiff Bees claims are typical of the claims of other Class members because they arise from the same conduct of Defendants—systematic violations of the TCPA's regulations regarding unsolicited faxes—and are based on the same legal theories.  *See* Section II.B, *supra*.  Likewise, the autodialed call claims all arise from Defendants' common course of advertising their services by placing autodialed calls to Plaintiffs and Class members.  *See id.*  In such circumstances, the typicality element is satisfied.  *See, e.g., Papa John's Int'l*, 286 F.R.D. at 569 (finding typicality satisfied where the Plaintiffs' claims, "like all class members' claims, [arose] from text marketing campaigns commissioned by Papa John's franchisees and executed by the same marketing vendor …"); *CE Design v. Beaty Const., Inc.*, 07 C 3340, 2009 WL 192481, at *5 (N.D. Ill. Jan. 26, 2009) (typicality satisfied where plaintiffs and class members all alleged violations of the TCPA); *Kavu, Inc.*, 246 F.R.D. at 648 (typicality satisfied where plaintiffs and class members received unsolicited faxes).

4.   <u>The Named Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Class</u>

The final Rule 23(a) prerequisite requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  This factor has two components.  First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class.  *Lerwill v. Inflight Motion Pictures*, 582 F.2d 507, 512 (9th Cir. 1978).

Plaintiffs have the same interests as the proposed Class members—Bee received multiple faxes from Defendants under aliases connected to Capital Alliance.  Chick received an automated call on his cellular phone.  Furthermore, Plaintiffs have actively participated in the litigation by producing their telephone records, responding to discovery, sitting for depositions, and otherwise assisting counsel in their prosecution of this case.  Plaintiffs have demonstrated that they are zealous advocates for the Class, putting the Class' interests ahead of their own.  The proposed class representatives have no interests antagonistic to the interests of the proposed Class.

Similarly, Plaintiffs' counsel have regularly engaged in major complex litigation, and have extensive experience in consumer class action lawsuits and TCPA class actions in particular.  Declaration of Beth E. Terrell in Support of Plaintiffs' Motion for Class Certification ("Terrell Decl.") ¶¶ 2–5.  Plaintiffs' counsel have been appointed as class counsel in complex consumer class actions and in numerous TCPA cases.  Terrell Decl. ¶ 3.

5.   <u>Rule 23(b)'s Requirements Are Met</u>

In addition to meeting the requirements of Rule 23(a), a class action must also satisfy the requirements of one of the subdivisions of Rule 23(b).  Fed. R.

Civ. P. 23(b).  Certification is appropriate under Rule 23(b)(3) if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and… a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

          a.     *Common questions of law and fact predominate*

Common issues "predominate" where a common nucleus of facts and potential legal remedies dominate the litigation.  *See Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 962 (9th Cir. 2005); *see also Jimenez*, 2014 WL 4338841, at *3 (holding certification appropriate where common factual and legal issues lie "at the core of the purported class' claims"); *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (holding certification is appropriate unless individual questions "overwhelm questions common to the class").

This case is particularly well-suited for class certification because it involves common legal questions regarding the lawfulness of Defendants' telemarketing practices.  Plaintiffs allege that Defendants violated the TCPA by bombarding small businesses with unsolicited junk faxes and prerecorded calls in order to further their business—the brokering of small business loans.  To disguise their unlawful conduct, Defendants hid behind aliases and call-forwarding technology, all of which can be traced back to Defendants.  All of the Class members' claims will rise or fall on whether Defendants can be held liable for these junk faxes and telephone calls.  In such circumstances, common issues predominate.  *See, e.g., Silbaugh v. Viking Magazine Serv.*, 278 F.R.D. 389, 393 (N.D. Ohio 2012) (finding common issues predominated where a single text message marketing campaign was conducted in the same manner with respect to all class members).

1    To prevail on their junk fax claim, Plaintiffs must establish (1) the receipt
2    of a fax (2) containing an advertisement.  *See* 47 U.S.C. § 227(b)(1)(B) and 47
3    CFR § 64.1200(a)(4).  Here, Defendants have admitted that they retained a
4    vendor to "generate leads" for their business by sending faxes on Defendants'
5    behalf.  Ex. 1 (Narin Dep.) at 38:6-15; 40:16-41:24.  These faxes advertised
6    Defendants' "fast and simple" loans and encouraged small business owners to call
7    a toll-free number to learn more about Defendants' services.  The common issue
8    that will predominate at trial is whether Defendants' practice violated the TCPA.

9    To prevail on their autodial claim, Plaintiffs must establish (1) a telephone
10   call, (2) using an automatic telephone dialing system or an artificial or
11   prerecorded voice, (3) to any cellular or residential telephone service.  *See* 47
12   U.S.C. § 227(b)(i)(A)(iii); 47 U.S.C. § 227(b)(i)(B) and 47 CFR §
13   64.1200(a)(1)(iii); 47 CFR § 64.1200(a)(2) .  Like the fax claim, Defendants have
14   admitted that they retained a vendor to place autodialed calls on their behalf.  Ex.
15   1 (Narin Dep.) at 22:22-23, 28:21-29:9, 30:10-31:23, 32:14-23.  Call records
16   indicate that Defendants placed hundreds of thousands of calls advertising their
17   services.  The common issue that will predominate at trial is whether Defendants
18   violated the TCPA by placing these calls.

19   Another common issue that will predominate at trial is whether or not
20   Narin can be held vicariously liable for Defendants' unlawful conduct.  This is
21   because vicarious liability "turns on the federal common law of agency and can
22   arise from actual authority, apparent authority, or ratification."  *Kristensen*, 2014
23   WL 1256035 at *8.  Therefore, the focus at trial will be on the relationship
24   between the defendants "without concern for any conduct by the class members."
25   *Id.* (holding common issue of whether defendant was vicariously liable for
26   unlawful text messages predominated at trial because because the focus would be

27
28                          PLAINTIFFS' MOTION FOR CLASS
                            CERTIFICATION
                    21      3:13-cv-02654-BAS-WVG

on defendants' post-message behavior); *see also Hawk Valley, Inc.* 2014 at *17 (holding that vicarious liability issues predominate because trial would focus on the nature and extent of the relationship between the defendants).

Another common issue that will predominate at trial is whether Narin can be held personally liable for the TCPA violations alleged in this case. Corporate officers who directly participate in or authorize conduct that violates the TCPA may be held personally liable, even if they took the allegedly unlawful actions on behalf of the company. *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 897 (W.D. Tex. 2001) (holding corporate officers and directors personally liable for TCPA violations where they had "direct, personal participation in or personally authorized the conduct found to have violated the statute"). Here, common evidence indicates that Defendant Narin authorized and participated in Defendants' unlawful marketing scheme. Section II.A, *supra*. This central issue will predominate at trial.

b.   *No Individualized Defenses Exist*

Unlike other TCPA cases, Defendants have stated that they do not contend that they received prior express consent from any person to whom faxes were sent by absolutefax.com or to whom calls were made by Message Communications. *See* Exs. 4, 5 at 6:11–18. Moreover, Defendants do not contend that they had an established business relationship with any person to whom absolutefax.com sent a facsimiles. *See id.* at 6:7–10. Thus, no individualized defenses exist.

Even if Defendants assert these defenses (they have not), issues of consent can be determined on a class wide basis because no evidence exists that even a single small business owner consented to receive the faxes at issue in this case. *See Kristensen v. Credit Payment Serv.*, --- F. Supp. 2d ---, Case No. 2:12-CV-00528-APG, 2014 WL 1256035, at *9 (D. Nev. March 26, 2014) (holding in the

absence of any evidence of consent by the defendant, consent is a common issue with a common answer; *see also Hawk Valley, Inc.,* 2014 WL 1302097, at *15 (certifying class in part because consent could be proven by common evidence, that is, the lack of any evidence in the record that any of the defendants had sought, much less obtained, consent from fax recipients). Thus, this affirmative defense does not preclude certification of the two Classes.

As for the "established business relation" defense, Defendants may rely on this defense only if the faxes they sent contain Opt-Out Notices that comply with the statute. *See* 47 U.S.C. §227(b)(C)(i-iii) (EBR defense only applicable where Opt Out Notice has been provided to facsimile advertisement recipients). They do not. *See* Section II.C, *supra*. This defense will not predominate.

c.    *The class action is a superior method for the adjudication of this controversy*

The Court should certify the Class if it finds that a "class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The superiority requirement's purpose is one of judicial economy and to assure that a class action is the "most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175–76 (9th Cir. 2010). "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Id*. at 1175. Moreover, the class action mechanism is superior to individual actions in consumer cases with thousands of members as "Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Holloway v. Full Spectrum Lending*, CV 06-5975 DOC

RNBX, 2007 WL 7698843, at *9 (C.D. Cal. June 26, 2007) (citing *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006)).

This case is particularly suited for class treatment because the claims of the Plaintiffs and the proposed Classes involve identical alleged violations of a federal statute, namely multiple unsolicited junk faxes and prerecorded telemarketing calls to Class members.  In addition, absent a class action, most members of the Class would find the cost of litigating their claims—each of which is statutorily limited by the TCPA to a maximum of $500 (or $1,500 if trebled)—to be prohibitive and such multiple individual actions would be judicially inefficient.

Were this case not to proceed on a class-wide basis, it is unlikely that any significant number of Class members would be able to obtain redress.  Current technology provides a strong financial incentive for unscrupulous advertisers to contact thousands of persons fairly cheaply and quickly.  This problem can only be countered with the possibility that all of the individuals harmed by such conduct can obtain redress, as other, similar litigation has not deterred Defendants.  Accordingly, common questions predominate and a class action is the superior method of adjudicating this controversy.

**B.     Constitutionally Sound Notice Can Be Provided to Class Members**

To protect the rights of absent Class members, the Court must provide them with the best notice practicable when it certifies a litigation class under Rule 23(b)(3).  Fed. R. Civ. P. 23(c)(2).   The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."   *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, call data from Phone.com, Easton Telecom, and other telephone service providers identify the unique telephone numbers of the classes that Plaintiffs seek to certify. Consequently, the classes may be readily identified by using "reverse look-up" technology. *See G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 WL 2581324, *4 (N.D. Ill. Aug. 20, 2009) (finding TCPA class sufficiently identifiable because "[plaintiff] may use the log and fax numbers to 'work backwards' to locate and identify the exact entities to whom the fax was sent."). As a result, notice may be sent directly via First Class mail to the Class members.

Notice also can be published on a website maintained and updated by Plaintiffs' attorneys. Class members will be able to use the site to stay apprised of important dates and to access the notice form and other key documents. Together, these approaches will provide the best practicable notice to the Class members. After certification is granted, Plaintiffs will submit a detailed notice plan and form to the Court.

## V. CONCLUSION

For the reasons discussed above, the requirements of Rule 23 are satisfied. Therefore, Plaintiffs respectfully requests that the Court enter an order certifying the proposed Classes pursuant to Rule 23(b)(3), appointing Terrell Marshall Daudt & Willie, PLLC as Class Counsel, and awarding such additional relief as the Court deems reasonable and just.

1    RESPECTFULLY SUBMITTED AND DATED this 5th day of September,

2    2014.

3                              TERRELL MARSHALL DAUDT
                                  & WILLIE PLLC
4

5                         By:   /s/ Beth E. Terrell, CSB #178181
6                                Beth E. Terrell, CSB #178181
                                 Email: bterrell@tmdwlaw.com
7                                Michael D. Daudt, CSB #161575
                                 Email:  mdaudt@tmdwlaw.com
8                                Mary B. Reiten, CSB #203412
                                 Email:  mreiten@tmdwlaw.com
9                                Whitney B. Stark, CSB #234863
10                               Email:  wstark@tmdwlaw.com
                                 936 North 34th Street, Suite 300
11                               Seattle, Washington  98103-8869
                                 Telephone:  (206) 816-6603
12                               Facsimile:  (206) 358-3528
13

14                               Stefan Coleman
15                               Email: law@stefancoleman.com
                                 LAW OFFICES OF STEFAN COLEMAN
16                               201 South Biscayne Boulevard, 28th Floor
                                 Miami, Florida  33131
17                               Telephone: (877) 333-9427
                                 Facsimile:  (888) 498-8946
18

19

20                               *Attorneys for Plaintiffs*

21

22

23

24

25

26

27                                              PLAINTIFFS' MOTION FOR CLASS
                                                          CERTIFICATION
28                                   26            3:13-cv-02654-BAS-WVG

<u>CERTIFICATE OF SERVICE</u>

I, Beth E. Terrell, hereby certify that on September 5, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

        Timothy Q. Day, CSB #188732
        Email: tday@homan-stone.com
        HOMAN & STONE
        12 North Fifth Street
        Redlands, California 92373
        Telephone: (909) 307-9380
        Facsimile: (909) 793-0210

        *Attorneys for Defendants*

DATED this 5th day of September, 2014.

        TERRELL MARSHALL DAUDT
        & WILLIE PLLC


        By:  /s/ Beth E. Terrell, CSB #178181
           Beth E. Terrell, CSB #178181
           Email: bterrell@tmdwlaw.com
           936 North 34th Street, Suite 300
           Seattle, Washington  98103-8869
           Telephone:  (206) 816-6603
           Facsimile:  (206) 350-3528

        *Attorneys for Plaintiffs*

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
3:13-cv-02654-BAS-WVG

27