HOMAN & STONE
Timothy Q. Day, Esq. [SBN 188732]
12 North Fifth Street
Redlands, California 92373
(909) 307-9380
(909) 793-0210 - Fax
L:\Bee vs. Capital Alliance Corp\PLEADINGS\BEE Opposition to Plts Motion Class Certification.WORKING.VERSION.wpd:

Attorneys for Defendants, CAPITAL ALLIANCE CORPORATION and NARIN CHARANVATTANAKIT

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BEE, DENNING, INC., d/b/a PRACTICE PERFORMANCE GROUP, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

CAPITAL ALLIANCE GROUP and NARIN CHARANVATTANAKIT,

Defendants.

CASE NO.: 3:13-cv-02654-BAS-WVG

**OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION BY DEFENDANTS CAPITAL ALLIANCE CORPORATION AND NARIN CHARANVATTANAKIT**

Complaint filed: 11/5/13

TO THE CLERK OF THE COURT, TO ALL PARTIES, AND TO THEIR COUNSEL OF RECORD:

Defendants, CAPITAL ALLIANCE GROUP and NARIN CHARANVATTANAKIT, hereby present their Opposition to Plaintiffs' Motion for Class Certification, as follows:

///

///

**TABLE OF CONTENTS**

Page No.


I. INTRODUCTION . . . . . 2

II. STATEMENT OF FACTS . . . . . 3

A. Capital Alliance Offers Products and Services to Provide Working Capital and Equipment Financing to a Broad Range of Customers, including Proprietorships, Corporations, Municipalities, and Non-profit Entities . . . . . 3

B. No Evidence Exists that the Third Party Vendors Sent Hundreds of Thousands of Unsolicited "Junk Faxes", Advertising the Services of Defendants to Potential Customers . . . . . 5

C. Defendants did not Create or Contribute to the Language on the Alleged Faxes Generated to Plaintiffs; the Opt Out Language on the Alleged Faxes Satisfy the TCPA and do not Support Class Certification . . . . . 7

D. Defendants did not Place Unlawful "Robocalls", or Any Unlawful Calls to Potential Borrowers . . . . . 8

E. Defendants have not Engaged in Unlawful Activities, and the Alleged Activities have not Continued by Defendants after the Indiana Attorney General Claim . . . . . 9

III. ARGUMENT . . . . . 9

A. Plaintiffs Fail to Satisfy the Four Prerequisites of Rule 23(a) . . . . . 10

1. Numerosity . . . . . 11

2. Typicality . . . . . 11

3. Adequacy . . . . . 13

B. Plaintiffs Fail to Establish Either Predominance or Superiority . . . . . 13

Predominance . . . . . 13

Superiority . . . . . 15

IV. PLAINTIFFS' MOTION IS UNTIMELY AND SHOULD BE STRICKEN . . . . . 15

V. CONCLUSION . . . . . 16

## TABLE OF AUTHORITIES

Page No.

### FEDERAL CASES


Amchem Prods., Inc. v. Windsor
521 U.S. 591 (1997) . . . . . . . . . . 13,15

Beck v. Maximus, Inc.
457 F. 3d 291 (3rd Cir. 2006) . . . . . . . . . . 9,10

Danvers Motor Co., Inc. v. Ford Motor Company
543 F. 3d 141 (3rd Cir. 2008) . . . . . . . . . . 9,10,13,15

Amchem Products, Inc. v. Windsor
521 U.S. 591 (1997) . . . . . . . . . . 11,10

Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, LLC
504 F. 3d 229 (2d Cir. 2007) . . . . . . . . . . 11

Huber v. Taylor
469 F. 3d 67 (3rd Cir. 2006) . . . . . . . . . . 14

Georgine v. Amchem Prods. Inc.
83 F. 3d 610 (3rd Cri. 1996) . . . . . . . . . . 10,14,15

In re Hydrogen Peroxide Antitrust Litigation
552 F. 3d 305 (3rd Cir. 2008) . . . . . . . . . . 9,10,11,14

In re LifeUSA Holding Inc.
242 F. 3d 136 (3rd Cir. 2001) . . . . . . . . . . 10,13

In re Mercedes-Benz Tele Contract Aid Litigation
257 F.R.D. 46 (D.N.J. 2009) . . . . . . . . . . 14

In re Shering Plough Corporation ERISA Litigation
(3rd Cir. 2009) . . . . . . . . . . 12

Johnston v. HBO film Mgmt., Inc.
265 F. 3d 178 (3rd Cir. 2001) . . . . . . . . . . 13

Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.
149 F.R.D. 65 (D.N.J. 1993) . . . . . . . . . . 11

NAACP v. North Hudson Regional Fire & Rescue
255 F.R.D. 374 (D.N.J. 2009) . . . . . . . . . . 10

New Directions Treatment Services v. City of Reading
409 F. 3d 293 (3rd Cir. 2007) . . . . . . . . . . 13

Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.
259 F. 3d 154 (3rd Cir. 2001) . . . . . . . . . . 11,13

## FEDERAL STATUTES

47 U.S.C. §227 .......... 2
47 U.S.C. §227(b)(1)(A)(iii) .......... 8
47 U.S.C. §227(b)(1)(B) .......... 8

## FEDERAL RULES

Fed. Rule 23 .......... 10,11
Fed. Rule 23(a) .......... 13
Fed. Rule 23(a)(1) .......... 11
Fed. Rule 23(a)(4) .......... 13
Fed. Rule 23(b) .......... 10
Fed. Rule 23(b)(3) .......... 10,13,15

## I. INTRODUCTION

Plaintiffs Bee, Denning, Inc., dba Practice Performance Group ("Bee") and Gregory Chick ("Chick") (collectively "Plaintiffs") allege that defendants Capital Alliance Group ("Capital Alliance") and Narin Charanvattanakit ("Narin") (collectively "Defendants") "systematically violated" the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227. In furtherance of their complaint, plaintiffs bring the instant Motion for Class Certification ("Motion") based upon incomplete evidence, supposition, and speculation.

Capital Alliance is a small business loan broker, providing services in the finance industry, including bringing together small businesses with lenders. Capital Alliance is a California corporation that has been in business since approximately 2009. Defendants do not use "various aliases" or "call-forwarding technology", as alleged by Plaintiffs.

Capital Alliance uses referrals of satisfied customers, direct mail, returning clients, and an internet presence to bring together lenders with small businesses in need of financing.

Plaintiffs support the their Motion with seven "small businesses owners" who have "stepped forward" to provide declarations about receiving marketing solicitations. Notably, the seven declarants are not private "residential" telephone or fax users. Rather, they, like plaintiffs Bee and Chick, are business owners who contend they received marketing materials on their business phone and/or fax lines.

Plaintiffs further seek to certify the purported class based upon "hundreds of thousands" of small business owners who have been affected. In fact, Plaintiffs present no evidence linking any of the alleged marketing activities to Defendants. Class certification is not appropriate because there is no evidence that the alleged facts are common to all proposed class members, nor is there sufficient evidence that the claims of the proposed class members arise out of a common nucleus of operative facts. In short, Plaintiffs have not, and cannot, establish that Defendants engaged in unlawful marketing practices affecting the alleged class members.

For the reasons set forth herein, Defendants respectfully request the court deny Plaintiffs' Motion.

///

## II. STATEMENT OF FACTS

### A. Capital Alliance offers products and services to provide working capital and equipment financing to a broad range of customers, including proprietorships, corporations, municipalities, and non-profit entities.

Defendant Narin, as an individual, does not provide the products and services that Capital Alliance provides. Rather, Narin is part owner and Chief Executive Officer of Capital Alliance. Narin does not match investors with small businesses seeking loans, as alleged by plaintiffs. (Exhibit 1 to Plaintiffs' Motion, Narin Deposition, at 13:14 - 14:18).[1]

Defendants object to plaintiffs' assertion that Capital Alliance funds loans quickly, sometimes within a week of receiving an application. (Motion at 2: 8-9.) Plaintiffs' reference *"Id.* at 51:10-15". However, no foundation or evidence is found for such an assertion within the deposition of defendant Narin as cited by plaintiffs.

Defendants additionally object to Plaintiffs' assertion that "the loans are generally unsecured and collect interest at rates higher than typical credit card interest of 12% to 14%". (Motion at 2:9-10). Again, Plaintiffs' Motion references the deposition of defendant Narin at 51:16-25 but testimony by Narin does not support this contention.

Additionally, Defendants object to plaintiffs' assertion that "Defendants employ 47 sales people, all of whom primarily field inbound phone calls from prospective buyers." (Motion at 2:11-12). Plaintiffs' motion cites the deposition of Narin at 21:15-25 but testimony by Narin does not support this contention.

Defendants did not retain vendor Absolutefax.com to solicit business through "junk facsimiles". Rather, Capital Alliance paid absolutefax.com for leads of prospective buyers. Absolutefax.com assured Defendants and maintains on their website that all marketing efforts are compliant with United States laws. (Exhibit 3, screenshots from absolutefax.com website). Plaintiffs fail to produce evidence that Absolutefax.com has violated the TCPA, or that there is any connection between Absolutefax.com and the produced faxes at all.

---

[1]Unless otherwise noted, all exhibits are attached to the Declaration of Timothy Q. Day in support of the Opposition to Plaintiffs' Motion for Class Certification ("Day Declaration").

Capital Alliance did not pay Absolutefax.com to send facsimiles to any person, for any reason. (Plaintiffs' Exhibits 4 & 5, Discovery Responses, at 6:19-25; Exhibit 1 to Plaintiffs' Motion, Narin Deposition, at 38:6-15, 40:16-41:24).

Capital Alliance does not engage in "mass telemarketing" or use an auto dialer to send advertisements to "millions of perspective customers", as alleged within Plaintiffs' Motion. (Motion at 2:19-21). In fact, deposition testimony provided by Narin makes no reference to "mass telemarketing", or to the number of perspective customers or marketing calls made by third party vendor Message Communications. Once again, Plaintiffs take the deposition testimony of witnesses out of context and set forth to this court facts which are not declared by the deponent.

Defendants did not pay Message Communications for leads generated through "robocalling campaigns", as alleged within the Motion. (Motion at 2:21-23). Defendants' responses to discovery make no reference to "robocalling campaigns".

Defendant Narin is not heavily involved in Capital Alliance's alleged "junk fax and telemarketing activities" because Capital Alliance does not engage in "junk fax" activities. Plaintiffs' Motion cites no credible authority supporting this contention. Defendant Narin's personal involvement with Capital Alliance does not include the "use of junk faxing and robocalling to solicit new business". Plaintiffs' Motion cites no foundation, evidence or authority for this contention. Rather, Plaintiffs' moving papers are littered with unfounded and sweeping allegations. Furthermore, Narin is not the person at Capital Alliance who "knows the details regarding Capital Alliance's junk fax and telemarketing efforts" because there are no junk fax efforts at Capital Alliance. Deposition testimony of Operations Manager, Christina Duncan, does not support Plaintiffs' contention. (Exhibit 3 to Plaintiffs' Motion, Duncan Deposition, at 19:2-11 and 20:2-5.) In fact, Ms. Duncan testified that she is not aware of Capital Alliance engaging in direct faxing . Nor does Capital Alliance use automatic dialing machines for "robocalling" to generate business, according to Ms. Duncan. (Exhibit 3 to Plaintiffs' Motion, Duncan Deposition, at 19:15-20).

Narin did not hire Absolute Fax to conduct junk fax marketing efforts. He did not hire Message Communications to "robocall on behalf of Capital Alliance to generate business". Plaintiffs provide no evidence or basis for these contentions. (Exhibit 1 to Plaintiffs' Motion, Narin

Deposition, at 38:6-39:6, and 29:1-9). There is no evidence that Narin personally place orders for "robocalling" with Message Communications.

Additionally, each of Narin's communications with Absolute Fax and Message Communications occurred while acting as CEO for Capital Alliance. Plaintiffs provide no evidence or facts establishing that Narin acted as a individual regarding his communications with Absolute Fax or Message Communications. Further, there is no evidence that Narin knew or could of known that the third party vendors were violating the TCPA, assuming violations occurred, a contention which defendants dispute.

Narin did not personally provide the contents for the pre-recorded messages used by Message Communications. Rather, acting as CEO of Capital Alliance, Narin provided the "general gist" of the content. (Exhibit 1 to Plaintiffs' Motion, Narin Deposition, at 31:8-23).

Narin did not personally consult with Message Communications regarding its TCPA compliance. Plaintiffs cite to the Narin Deposition at 32:14-34:4. Testimony provided by Narin at this citation provides no support or basis for Plaintiffs' contentions.

Finally, Plaintiffs' contend that Defendants did not have an established business relationship with class members. Such a relationship is a defense to the alleged TCPA violations. Defendants admit they had no established relationship with Plaintiffs. Defendants do not admit a lack of business relationship with the proposed class members because they have not been identified. Also, Plaintiffs provide no evidence that the third party vendors did not have established business relationships with the proposed class members.

**B. No evidence exists that the third party vendors sent hundreds of thousands of unsolicited "junk faxes", advertising the services of Defendants to potential customers.**

Plaintiffs have produced three (3) faxes allegedly sent by Absolutefax.com. (Exhibits 8, 9 and 10 to Plaintiffs' Motion). Narin was shown exhibits 8 and 10 (Bate numbers PLFFS 00001and 00003 respectively) during his deposition. He testified that he did not recognize the faxes and that they were not advertisements by Capital Alliance. (Exhibit 1, Narin Deposition at 25:4 - 28:5).

Plaintiffs issued subpoenas to Absolutefax.com and Message Communications and received no results to support Plaintiffs' cause. In fact, there is no credible evidence linking the third party

vendors to the alleged faxes or calls.

Attorney Reiten provides a declaration (at para. 12) asserting that Capital Alliance uses aliases to "disguise" the sending of faxes. Notably, the declaration is not supported by evidence or facts.

Declarant Carol Minto states she received faxes from "Prompt" and "Snap Business Loans". No evidence is submitted by Plaintiffs linking these companies to Defendants. Mrs. Minto called the number on the Snap Business Loans fax to opt out. She claims to have requested the opt-out and thereafter continued to receive faxes. Glaringly absent from the declaration of Carol Minto is a reference to Capital Alliance or Narin answering the phone when she called. In fact, nothing in the declaration connects the faxes received to Defendants, Absolutefax.com or Message Communications.

Similarly, declarant Clyde Griffey received faxes from "Nextday Business Loans", called the opt-out number and thereafter continued to receive faxes. Again, nothing in Mr. Griffey's declaration indicates that Defendants, Absolutefax.com or Message Communications were involved with these faxes.

Declarant Dan Kaufman received faxes from a variety of senders. He also called and opted out of future faxes, only to continue receiving same. Like the other declarants, Mr. Kaufman fails to indicate that any call was answered by Defendants or the third party vendors, or that any of the faxes came from Defendants, Absolutefax.com or Message Communications.

Continuing, declarant David Doud received faxes from at least 3 senders. He called the opt-out number and thereafter continued to receive faxes. Mr. Doud does not declare that Defendants or Defendants' third party vendors answered any phone call or sent any fax he received.

Declarant George Mitchell received faxes from a company called "FundQuick". Plaintiffs provide no evidence that Defendants are in any way connected to FundQuick. Mr. Mitchell does not state that Defendants or Defendants' third party vendors are in any way associated with the faxes he received.

As to the toll free numbers on the faxes, plaintiffs contend they "can be traced to Capital Alliance". (Motion at 6:22-25). Plaintiffs' rely upon the declaration of attorney Hoover, at paragraph

8, for this contention. Defendants hereby object to the Hoover declaration based upon foundation and hearsay. Specifically, paragraph 8 states that "we identified each of the numbers.....". There is no explanation of who "we" is, or how the numbers were identified. There is also no explanation of who called the numbers. Mrs. Hoover does not declare that she called. As such, the entirety of paragraph 8 should be stricken as without foundation and based upon hearsay.

Plaintiffs conclude with reference to Defendants' "unlawful marketing scheme". Again, Plaintiffs fail to set forth sufficient evidence of any "scheme" or unlawful marketing by Defendants, or on behalf of Defendants. Plaintiffs' also reference the Hoover declaration, "generally", for the proposition that at least 450,000 small business owners received faxes. In fact, Plaintiffs have produced only phone numbers of callers from various call records. There is no evidence connecting these callers to Defendants, or to Defendants' third party vendors. Further, there is no evidence that any of these callers ever received a fax.

**C. Defendants did not create or contribute to the language on the alleged faxes generated to plaintiffs; the opt out language on the alleged faxes satisfies the TCPA.**

Each fax submitted by Plaintiffs in support of this Motion contain an opt-out provision, even by the admission of Plaintiffs. Plaintiffs claim the opt-out violates the TCPA because it does not identify the sender of the faxes. In fact, the sender of each fax is clearly identified, as admitted by each declarant supporting the Motion. Not one declarant has stated they did not know who sent the fax. Because the faxes do not identify Capital Alliance (who did not send the faxes), Plaintiffs believe somehow the identification is not sufficient.

Plaintiffs further contend the faxes violate the TCPA because the opt-out provision is not clear and conspicuous. In fact, the opt-out language is located dead center at the bottom of the faxes, with the eye-catching term "No Longer Interested?" in plain sight. Additionally, the opt-out provides two alternatives, a website or toll free phone number. Defendants did not send these faxes and were not involved in their creation. However, the opt-out language is clearly compliant with the TCPA.

Without a factual basis, Plaintiffs contend that Capital Alliance ignored consumers' requests to opt out. (Motion at 7:18-19). Plaintiffs' submit no evidence of Capital Alliance being contacted by a plaintiff or class member who requested opt-out and Capital Alliance thereafter causing

faxes/calls to continue. As set forth above, the non-party declarants such as Carol Minto do not state that Capital Alliance answered the phone when she called to opt-out.

According to Plaintiffs, class member after class member attempted to opt-out and thereafter continued to received faxes. However, none of these class members connect Defendants or Defendants' third party vendors to the faxes or opt-out requests.

**D. Defendants did not place unlawful "robocalls", or any unlawful calls, to potential borrowers.**

Capital Alliance acknowledges paying Message Communications to make calls through its broadcasting services, for the purpose of marketing the services of Capital Alliance. Defendants do not engage in illegal "robocalling, as plaintiffs allege. (Exhibit 1 to Plaintiffs' Motion, Narin Deposition, at 29:1 - 31:23).

Plaintiff Chick, through his attorneys, alleges that thousands of unlawful calls were placed by Defendants. In fact, Chick is the sole plaintiff in this case who alleges receipt of unsolicited phone calls. However, Chick's claim has no merit because each and every call he received (without Defendants admitting they placed any calls, or caused calls to be placed to Chick, because there is no evidence of such conduct) was to his business phone line. Specifically, Chick formed a sole proprietorship, Ramona's Plumbing, in 1997 using his residential address. At that same time, Chick began using his cell phone number, (760) 788-2889, for the business. (Exhibit 2, Deposition of Chick, at 19:13 - 21:15). This is the only phone number used for Ramona's Plumbing since 1997. (Exhibit 2, Chick Deposition, at 27:18-23). Each call to Chick that is the subject of this lawsuit was to his plumbing business line. (Exhibit 2, Deposition of Chick, at 28:9-24).

As Plaintiffs' Motion sets forth, to prevail on the autodial claim they must establish (1) a telephone call, (2) using an automatic dialing system, (3) to any cellular or residential telephone service. 47 U.S.C. §227(b)(1)(A)(iii) and 47 U.S.C. §227(b)(1)(B). Here, the alleged call to Chick was to his business line, not a residential line. If Chick received a call on his cell phone, it was because he forwarded the business line. (Exhibit 2, Chick Deposition, at 23:4-7). Whoever made the call to Chick had no way of knowing it would be forwarded to a cell phone. There is no evidence to establish a scenario other than the caller placing a call to Chick's business phone number, ending

in 2889. Chick cannot prevail on his claim because the call was not placed to a cellular or residential telephone service.

**E. Defendants have not engaged in unlawful activities, and the alleged activities have not continued by defendants after the Indiana attorney general claim.**

Capital Alliance settled a claim by the Indiana Attorney General in 2013. The settlement was not in the amount of $40,000 and the terms were supposed to be confidential. Regardless, Capital Alliance did not admit liability and settled the case only to avoid the cost of protracted and threatened litigation by the Attorney General.

There is no evidence that the faxes involved in the Indiana claim were sent by Absolutefax.com or caused to be sent by Capital Alliance. Capital Alliance did not continue to send faxes in violation of the TCPA after the Indiana settlement and there is no evidence of such conduct. Plaintiffs rely upon the testimony of Capital Alliance employee, Christina Duncan, for the contention that Capital Alliance continues to send "junk faxes". (Plaintiffs' Motion at 9:23-26). However, taken in context, Mrs. Duncan testified that Capital Alliance currently uses faxes "to obtain customers". (Exhibit 3 to Plaintiffs' Motion, Duncan Deposition, at 19:24-20:1). Mrs. Duncan did not testify that junk faxes are sent, much less mass faxes through third party vendors. In fact, Capital Alliance, like most businesses, uses faxes to communicate in a lawful manner with customers. This is the true context of Mrs. Duncan's testimony.

Plaintiffs further contend that some of the seven declarants continued to receive faxes in the summer of 2014. As set forth above, none of the declarants have established that the faxes received were sent by Defendants or Absolutefax.com.

## III. ARGUMENT

A party seeking class certification bears the burden of proving that the prerequisites of Rule 23(a) have been met and must also show that the action is maintainable under at least one of the three subsections of Rule 23(b). Danvers Motor Co., Inc. v. Ford Motor Company, 543 F.3d 141, 147 (3rd Cir. 2008); Beck v. Maximus, Inc., 457 F.3d 291, 297 (3rd Cir. 2006).

Class certification is proper only if the court is satisfied, after a "rigorous analysis", that all prerequisites of Rule 23 are met. In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 309 (3rd

Cir. 2008. 3rd Cir. 2008); Beck v. Maximus, Inc., 457 F.3d 291, 297 (3rd Cir. 2006). This analysis demands a "thorough examination of the factual and legal allegations". In re Hydrogen Peroxide Antitrust Litig., 552 F.3d at 309. Failure to meet any of Rule 23(a) or 23(b)'s requirements precludes certification. In re LifeUSA Holding Inc., 242 F.3d 136, 147 (3rd Cir. 2001).

Under Rule 23 (a), a class may be certified only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Danvers Motor Co., Inc. v. Ford Motor Company, 543 F.3d 141, 147 (3rd Cir. 2008).

In addition to those requirements, one of the provisions of Rule 23(b) must be met. Beck v. Maximus, Inc., 457 F.3d 291, 297 (3rd Cir. 2006). Plaintiffs here seek class certification under alternatively, Rule 23(b)(3).

Rule 23(b)(3), on which plaintiffs solely rely, provides that a class may only be certified if "the question of law or fact common to the members of the class predominate over any question affecting individual members, and ... a class action is superior to other available methods for the fair and efficient adjudication of the controversy." To satisfy this requirement, plaintiffs simply rely on the re-stated allegations of the amended complaint and present unfounded conclusions that plaintiffs will prevail in the underlying action.

**A. Plaintiffs Fail to Satisfy the Four Prerequisites of Rule 23(a)[2]**

Because the decision to certify a class requires factual determinations that each requirement of Rule 23 has been met, a mere threshold showing by a party is insufficient to merit class certification. In re Hydrogen Peroxide Antitrust Litigation, 552 F.3d 305, 316-17 (3rd Cir. 2008); NAACP v. North Hudson Regional Fire & Rescue, 255 F.R.D. 374, 380-81 (D.N.J. 2009).

---

[2]Where an action, such as the instant matter, seeks to proceed as a class under Rule 23(b)(3), "the commonality requirement of Rule 23(a) is subsumed by rule 23(b)(3)'s predominance requirement." Danvers Motor Co. v. Ford Motor Company, 543 F.3d 141, 148. Accordingly, it is appropriate to treat these requirements together. Georgine v. Amchem Prods. Inc., 83 F.3d 610, 626 (3rd Cir. 1996), aff'd sub nom Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997). The following Rule 23(a) discussion, therefore, will address only the numerosity, typicality and adequacy factors, leaving consideration of commonality to the Rule 23(b)(3) predominance discussion.

Plaintiffs' motion does not even come close to a threshold showing a class eligibility. Thus, the Motion is characterized by a complete absence of evidence showing an entitlement to class certification and relies solely on the allegations contained in the amended complaint, as recycled in counsel's memorandum of law, accompanied by factual conclusions based upon indirect evidence that cannot establish liability against Defendants. In re Hydrogen Peroxide Antitrust Litigation, 552 F.3d 305, 316 (3rd Cir. 2008) [holding that it is inappropriate to accept the plaintiff's substantive allegations as true when deciding whether to certify a class]. Although Plaintiff's absence of proof precludes the mandated "rigorous analysis" necessary to determine whether Rule 23's requirements have been met, it is nonetheless clear Plaintiffs fail to meet their burden of showing that class certification is warranted.

**1. Numerosity**

To meet the numerosity requirement, the class representatives must demonstrate that it would be difficult or inconvenient to join all class members. E.g., Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C., 504 F.3d 229, 244-45 (2d Cir. 2007). Plaintiffs dispense with this requisite showing and rely only on the contention that numerosity is presumed where the proposed class contains 40 or more members.

However, the numerosity requirement of FRCP 23(a)(1) is more than a mere "numbers game" and some showing that joinder is impracticable must be made to satisfy the requirement. Factors to consider in deciding whether joinder is practical include whether members are readily identifiable and easily located, the geographical dispersion of class members, and whether proposed members would be able to pursue remedies on an individual basis. Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp., 149 F.R.D. 65, 74 (D.N.J. 1993).

Here, Plaintiffs claim there are at least 458,413 facsimile class members and at least 33,406 automated call class members. As set forth herein, Plaintiffs submit no actual evidence that Defendants are linked to the alleged class members. Rather, Plaintiffs rely upon phone records with tens of thousands of calls and phone numbers that are not connected to Defendants. What Plaintiffs actually submit are an additional seven (7) declarants who complain of faxes from unknown sources, declarants who have not even committed to joining the proposed class. Applying a rigorous analysis,

plaintiffs have failed to meet their burden of proof regarding numerosity.

**2. Typicality**

The typicality requirement ensures that the class representatives "are sufficiently similar to the rest of the class - in terms of their legal claims, factual circumstances, and stake in the litigation - so that certifying those individuals to represent the class will be fair to the rest of the proposed class". In re Shering Plough Corporation ERISA Litigation, 2009 WL 4893649 (3rd Cir. 2009) [emphasis in original]; Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 183-85 (3rd Cir. 2001).

As set forth herein, plaintiff Chick is the only party or declarant who allegedly received phone calls, and those calls were to his business phone. Chick's claims are not typical of the claims of other proposed class members because Chick did not receive "residential" calls. The "other" unknown class members are just that, unknown, including whether or not they received calls to residential lines, whether they had pre-existing business relationships with the caller (Plaintiffs' evidence does not establish that Defendants called proposed class members, or caused proposed class members to be called), or whether the calls were part of defendants' advertising. Plaintiffs have failed to set forth evidence showing the proposed class members have claims that are typical to those of Chick, even assuming that Chick has legitimate claims based upon calls to his business phone line.

Regarding facsimiles, Plaintiff Bee contends its claims are typical of other class members because they arise from defendants' systematic violations of the TCPA. First, Bee fails to submit credible evidence that connects the alleged "systematic" violations to defendants. Rather, Bee relies upon thousands of phone records which do not demonstrate that Defendants sent one fax. Defendants paid for marketing leads from a third party vendor, Absolutefax.com. No evidence submitted by Plaintiffs establishes that the faxes received by Bee, or other class members, were from Absolutefax.com.

Further, Bee relies upon thousands of phone calls from various class members to thousands of different phone numbers. Merely a handful of those phone calls, if any at all, are connected to Capital Alliance. Certainly, none of the phone numbers are connected to defendant Narin. Bee's

claim is not typical of the other class members because there is no evidence the other class members received faxes, or that those class members made calls to defendants in response to the alleged faxes. In short, Plaintiffs' claims are conclusory, based upon conjecture and theories.

**3. Adequacy**

Plaintiffs similarly fail to meet their burden of demonstrating Rule 23(a)(4)'s requirement that they "will fairly and adequately protect the interest of the class". Adequate representation depends on two factors: (1) that the named representatives must be qualified and capable to represent the class, and (2) that plaintiffs not have interests antagonistic to those of the class. New Directions Treatment Services v. City of Reading, 490 F.3d 293 (3rd Cir. 2007); Johnston vs. HBO Film Mgmt., Inc., 265 F.3d 178 (3rd Cir. 2001).

Here, plaintiff Chick is not qualified to represent the phone call class because he received calls at his business phone only. Chick does not have a claim. Further, there is no evidence establishing the proposed call class members received unsolicited calls, or, if received, that those calls were in violation of the TCPA. If Chick does not have a claim, then he cannot represent a class of members who the court does not even know received calls.

Similarly, plaintiff Bee, a corporation, cannot adequately represent the fax class because the evidence is not sufficient to show Bee received faxes from defendants, or faxes caused to be sent by defendants.

**B. Plaintiffs Fail to Establish Either Predominance or Superiority**

Plaintiffs argue that a class action is maintainable under 23(b)(3), which requires the court to find common questions of law and fact predominate and that a class action is the superior method of adjudication. ., Amchem Products, Inc. v. Windsor, 521 U.S. 591, 615 (1997). Plaintiffs fail to make either showing.

**Predominance**

The predominance requirement "tests whether the class is sufficiently cohesive to warrant adjudication by representation, and mandates that it is far more demanding than the Rule 23(a) commonality requirement." Danvers Motor Co., Inc. v. Ford Motor Co. 543 F. 3d 141, 148 (3rd Cir. 2008); In re LifeUSA Holding Inc., 243 F. 3d 136, 144 (3rd Cir. 2001). Class certification is not

proper, therefore, "[if] proof of the essential elements of the cause of action requires individual treatment." Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F. 3d 154, 172 (3rd. Cir. 2001). Thus, plaintiff must show that the elements of their claims are capable of proof at trial through evidence that is common to the class rather than individual to its members. In re Hydrogen Peroxide Antitrust Litigation, 552 F. 3d 305, 311-312, 317 (3rd Cir. 2008); In re Mercedes-Benz Tele Contract Aid Litigation, 257 F.R.D. 46 (D.N.J. 2009).

In deciding whether Plaintiffs' claims are amenable to common proof, consideration of the elements of each cause of action must be accomplished in light of the correct jurisdiction's law, necessitating a choice of law analysis. E.g., Huber v. Taylor, 469 F. 3d 67, 87-83 (3rd Cir. 2006). Those variations in state law can overwhelm any common issues and defeat predominance. Georgine v. Amchem Prods, Inc., 83 F. 3d at 626. In multi-district litigation, the transferee court applies the choice of law rules of the states in which the various actions were originally filed.[3] In re Mercedes-Benz Tele Contract Aid Litigation, 257 F.R.D. 46 (D.N.J. 2009).

Because of the complexities raised by the required choice of law analysis and the variations in state law which apply to plaintiffs' claims, such claims are not capable of proof through evidence that is common to the class, but require evidence unique to each individual class member, defeating predominance.

Plaintiffs contend class certification is appropriate because the case involves common legal questions regarding Defendants' alleged TCPA violations. Specifically, Plaintiffs allege that defendants "bombard" small business with faxes and calls. However, Plaintiffs fail to provide actual evidence that connects the alleged faxes/calls to Defendants, or event to Defendants' third party vendors. Rather, Plaintiffs would have the court rely upon two plaintiffs (one for faxes and one for calls) and seven (7) declarants (none of the 7 can establish a connection to Defendants) to believe that tens, or hundreds, of thousands of faxes and calls were caused by Defendants. If there is no evidence of violations, then the TCPA cannot be a common nucleus of law in the case.

Plaintiffs also contend that Defendants used aliases and call-forwarding technology. This

[3] While plaintiffs claim the potential class could be nationwide, they identify only California claimants.

is a theme throughout plaintiffs' Motion. Glaringly absent from the Motion is evidence the Defendants used either. Using a rigorous evidentiary standard, coupled with the heightened requirement for predominance, Plaintiffs' Motion cannot prevail.

**Superiority**

Plaintiffs fail to show superiority. The superiority inquiry requires the court to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." Danvers Motor Co. v. Ford Motor Company, 543 F. 3d 141, 149 (3rd Cir. 2008) [citing Georgine v. Achem Products, Inc., 83 F. 3d at 632]. Rule 23(b)(3) specifically directs the court to consider:

> (A) the interest of members of the class individually controlling the prosecution of defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
> (C ) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the difficulties likely to be considered in the management of the class action.

Analysis of these factors shows that plaintiffs have not demonstrated superiority. Plaintiff Chick's claim is questionable, at best. Plaintiffs have provided no indication of other call class members who have legitimate claims or are willing to join the class. Based thereon, certification for the call class would be inefficient and unproductive. If other call class members exist or are drawn from the woodwork by Plaintiffs' counsel, then an appropriate claim can be made at that time.

Similarly, the fax class is limited to one corporate plaintiff and seven declarants who cannot connect their faxes to Defendants. The phone record evidence otherwise submitted by Plaintiffs does not establish any significant number of persons who received faxes (from unknown entities) and that those faxes solicited business for Defendants.

Clearly, class certification in this matter will do nothing to advance the core policy of a class action which is "to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action" by aggregating those claims. Amchem Products, Inc. v. Windsor, 521 U.S. 591, 617 (1997).

Finally, the individualized issues of liability and damages will devolve into multiple mini-trials, rendering manageability of the class exceedingly difficult. For these reasons, adjudicating this

controversy as a class action is not a superior method.

## IV. PLAINTIFFS' MOTION IS UNTIMELY AND SHOULD BE STRICKEN

Pursuant to the Court's Case Management Order dated April 7, 2014, Plaintiffs were to file and serve their Motion for Class Certification on or before September 5, 2014. Plaintiffs filed their initial Memorandum of Points and Authorities on September 5, 2014. However, supporting evidence for the Motion, including the Declaration of Mary Reiten and exhibits attached thereto, were filed and served on September 6, 2014, one day following the due date. Plaintiffs did not move the Court for leave to file a tardy declaration or exhibits. The tardy declaration and exhibits should be stricken. Without these supporting materials, Plaintiffs' Motion is without foundation and should be denied.

Plaintiffs later withdrew their initial Memorandum of Points and Authorities and filed a "substitution" brief on September 10, 2014, 5 days after the due date. Again, plaintiffs did not seek or obtain relief from this Court to file and serve a tardy Motion. Plaintiffs' tardy Motion has shortened the time allowed for Defendants to respond. Defendants request the Court strike plaintiffs' tardy substitution brief. Since the original Motion (the motion without timely filed supporting evidence) has been withdrawn, there is no motion for class certification upon which the Court should rule.

## V. CONCLUSION

As set forth above, Plaintiffs have failed to submit evidence sufficient to establish a call class or fax class. Additionally, Plaintiffs' procedural violations warrant the Motion be denied.

Defendants respectfully request the court deny Plaintiffs' request for certification of a call class. Additionally, Defendants request the court deny Plaintiffs' request for certification of a fax class.

HOMAN & STONE

BY: s/ Timothy Day

Timothy Q. Day, Esq.
Email: tday@homan-stone.com
12 North Fifth Street
Redlands, California 92373
Telephone: (909) 307-9380
Facsimile: (909) 793-0210

*Attorneys for Defendants*

CERTIFICATE OF SERVICE

I, Timothy Q. Day, hereby certify that on September 19, 2014, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system which will send notification of such filing to the following:

Beth E. Terrell, Esq.
bterrell@tmdwlaw.com
Michael D. Daudt, Esq.
mdaudt@tmdwlaw.com
Whitney B. Stark, Esq.
wstark@tmdwlaw.com
Mary Reiten
mreiten@tmdwlaw.com
TERRELL MARSHALL DAUDT & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, WA 98103-8869
Phone: (206) 816-6603
Fax: (206) 358-3528
Attorneys for Plaintiff

Stefan Coleman *(Pro Hac Vice)*
LAW OFFICES OF STEFAN COLEMAN
201 South Biscayne Blvd. 28th Fl.
Miami, FL 33131
Phone: (877) 333-9427
Fax: (888) 498-8946
Attorneys for Plaintiff

DATED this 19th day of September, 2014.

HOMAN & STONE

BY: s/ Timothy Day
Timothy Q. Day, Esq.
Email: tday@homan-stone.com
12 North Fifth Street
Redlands, California 92373
Telephone: (909) 307-9380
Facsimile: (909) 793-0210

*Attorneys for Defendants*