1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18

| | |
|---|---|
| BEE, DENNING, INC., d/b/a PRACTICE PERFORMANCE GROUP; and GREGORY CHICK, individually and on behalf of all others similarly situated,<br><br>                               Plaintiffs,<br><br>        v.<br><br>CAPITAL ALLIANCE GROUP; and NARIN CHARANVATTANAKIT,<br><br>                               Defendants. | Case No. 13-cv-2654-BAS-WVG<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>**(2) DENYING DEFENDANTS' MOTION TO STRIKE** |

19
20
21
22
23
24
25
26
27
28

Plaintiffs Bee, Denning, Inc. ("Bee") and Gregory Chick ("Chick") bring this putative class action against Defendants Capital Alliance Group ("Capital Alliance") and Narin Charanvattanakit ("Narin") alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. (ECF No. 6.) Plaintiffs now move for certification of two proposed classes pursuant to Federal Rule of Civil Procedure 23. (ECF No. 26 at Exh. A ("Pls.' Mot.")) Defendants filed an opposition—arguing generally that Plaintiffs failed to satisfy the requirements of Rule 23—to which Plaintiffs replied. (ECF No. 27; ECF No. 28). Defendants also move to strike as untimely the Declaration of Mary Reiten and Plaintiffs' Motion for Class Certification. (ECF No. 27.)

The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). Therefore, the Court **DENIES** Plaintiffs' *ex parte* motion for oral argument. (ECF No. 29.)

For the reasons that follow, the Court **DENIES** Defendants' Motion to Strike and **GRANTS** Plaintiffs' Motion for Class Certification under Rule 23(b)(3), with the Court's amendment to the automated call class definition as discussed below.

## I.   BACKGROUND

The allegations at the heart of this case involve a familiar feature of the modern business and consumer landscape—telemarketing. Defendant Capital Alliance Group, a California corporation with its principal place of business in Santa Ana, CA, acts as a loan broker that matches investors (lenders) with small businesses seeking loans. (FAC 2:14–18; Pls.' Mot. 2:5–12.) Defendant Narin is the CEO of Capital Alliance, and is responsible for the company's daily operations, including sales and marketing activities. (Pls.' Mot. 3:3–4:5.) Plaintiff Bee, a consulting company based in La Jolla, CA, alleges that on or about August 14, 2013, it received from Capital Alliance an unsolicited fax advertisement offering a "fast and simple" short-term business loan in violation of the TCPA. (FAC 5:3–6.) Bee received similar faxes from Defendants on September 9, 2013 and September 23, 2013. (FAC 5:19–20.) These fax advertisements—which are substantially similar in form and content—do not list Capital Alliance as the company offering the loan, but instead use different company names, such as "Community Business Funding." (Pls.' Mot. 5:18–6:5.) However, when Bee called the number listed on one of the faxes, Bee was ultimately directed to a live representative of Capital Alliance. (FAC 5:7–16.) Plaintiffs assert that Capital Alliance uses at least eleven aliases to disguise the fact that the fax advertisements are sent on its behalf. (Pls.' Mot. 4.) Bee did not provide prior express consent to receive fax advertisements from Capital Alliance, nor did it have an established business relationship with Capital Alliance. (FAC 5:24–28.)

Plaintiff Bee contends that several other small business owners have similarly

received unsolicited "junk faxes" from Capital Alliance in violation of the TCPA. (Pls.' Mot. 4:6–7:4.) In each instance, the allegations and supporting declarations involve a strikingly similar set of circumstances: (1) a person receives an unsolicited fax advertisement offering a business loan from a company with a nondescript name such as "Community Business Funding," "Community," or "Snap Business Funding"; (2) the fax directs the recipient to call a toll-free number or visit a website listed on the fax to start the loan application process; and (3) calls made to the toll-free numbers listed on these fax advertisements, more often than not, ultimately connect to Capital Alliance.[1] (Hoover Decl. 3:6–11.) In short, the fax advertisements contain different company names and toll-free numbers, but they are ultimately traceable to Capital Alliance.

According to Bee, Defendants contracted with a third-party vendor, Absolute Fax, to solicit business through these junk faxes on Defendants' behalf. (Pls.' Mot. 2:13–18.) Defendant Narin acknowledges that Absolute Fax is the only fax vendor Defendants retained to "generate leads" and "make[] the phone[s] ring," but maintains that Defendants did not pay Absolute Fax to send facsimiles "to any person, for any reason." (Defs.' Opp'n 4:1–2.) Absolute Fax is exclusively in the business of fax marketing. (Pls.' Mot. 2:16–17.)

For his part, Plaintiff Chick alleges that on or about December 6, 2013, he received an automated call with a prerecorded message to his cell phone from the phone number 888-364-6330. (FAC 6:18–22.) The prerecorded message related to preapproval for a business loan. (FAC 6:19–20.) When a caller dials 888-364-6330, the call is answered by an automated answering system that ultimately connects to Capital Alliance. (FAC 6:24–7:2.) Chick alleges that this and like calls violate the TCPA's prohibition on prerecorded voice calls. (FAC 6:18–7:10.) Defendant Narin

---

[1] Plaintiffs assert that the reason some of the toll-free numbers listed on the unsolicited fax advertisements did not ultimately connect to Capital Alliance was because those numbers were either (1) disconnected or (2) in service, but connected to answering machine messages that contained no identifying information. (Hoover Decl. 3:8–11.)

acknowledges that Capital Alliance contracted with a company named Marketing Communications to generate leads, and admits that he provided the "gist of the content" for the prerecorded messages Marketing Communications used to advertise Capital Alliance's product. (Reiten Decl. 21:21–24:23.)

Plaintiffs allege that Defendants violated two separate provisions of the TCPA. The first, 47 U.S.C. § 227(b)(1)(C), makes it unlawful "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement," unless the sender has an "established business relationship" and meets other conditions.[2] The second provision at issue, 47 U.S.C. § 227(b)(1)(A), makes it unlawful "to make any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service[.]" The statute creates a private right of action, providing for $500 or the actual monetary loss in damages for each violation, and treble damages for each willful or knowing violation. 47 U.S.C. § 227(b)(3).

Plaintiffs filed this putative class action on behalf of a nationwide class of individuals who received unsolicited fax advertisements sent by or on behalf of Capital Alliance, or who received telephone calls made by or on behalf of Capital Alliance using a prerecorded voice. Plaintiffs now move to certify the following two classes pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3):

> **Junk Fax Class**: All persons or entities in the United States who, on or after four years before the filing of this action, were sent by or on behalf of Defendants one or more unsolicited advertisements by telephone facsimile machine that bears the business name Community, Community Business Funding, Fast Working Capital, Snap Business Funding, Zoom Capital,

---

[2] Under the TCPA's implementing regulations, a fax "sender" is defined as "the person or entity *on whose behalf* a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10) (emphasis added). Thus, under this definition, a company can "send" an unsolicited fax advertisement without directly participating in the physical transmission of such a fax.

Nextday Business Loans, 3DayLoans, Bank Capital, FundQuik, Prompt, or Simple Business Funding.

**Automated Call Class**: All persons or entities in the United States who, on or after four years before the filing of this action received a call on either their cellular or residential telephone line with a prerecorded message from 888-364-6330 that was made on [sic] or on behalf of Defendants.

(Pls.' Mot. 12:3–15.)

As a preliminary matter, the Court finds that Plaintiffs' Motion for Class Certification impermissibly expands the automated call class proposed in Plaintiffs' First Amended Complaint. Plaintiffs' Motion for Class Certification seeks to certify a class comprising "[a]ll persons . . . who . . . received a call on either their cellular *or residential* telephone line with a prerecorded message . . . made [by] or on behalf of Defendants," whereas Plaintiffs' First Amended Complaint references only persons who received a call on their cellular phone. (Pls.' Mot. 10, 12.) This Plaintiffs cannot do. "The Court is bound to class definitions provided in the complaint and, absent an amended complaint, will not consider certification beyond it." *Costelo v. Chertoff*, 258 F.R.D. 600, 604–05 (C.D. Cal. 2009). The primary exception to this principle is when a plaintiff proposes a new class definition that is *narrower* than the class definition originally proposed, and does not involve a new claim for relief. *See Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303 (S.D. Cal. 2015) (permitting plaintiff to propose a new class definition in his motion for class certification when the new definition was "simply a narrower version of the class definition presented in the [amended complaint]"); *Knutson v. Schwan's Home Serv., Inc.*, No. 3:12-cv-0964-GPC-DHB, 2013 WL 4774763, at *5 (S.D. Cal. Sep. 5, 2013) (allowing plaintiffs to propose a class definition narrower than the class alleged in plaintiffs' second amended complaint when the new definition "include[d] individuals that were allegedly called in violation of the same subsection of the TCPA"). Here, however, Plaintiffs' inclusion in the automated call class of persons who received a call to their *residential*

13cv2654

telephone line involves an entirely different subsection of the TCPA, and thus raises a new claim for relief not alleged by Plaintiffs in their complaint. *Compare* 47 U.S.C. § 227(b)(1)(A)(iii) *with* 47 U.S.C. § 227(b)(1)(B). Therefore, the Court will consider only an automated call class limited to persons receiving prerecorded voice calls to their cell phone. Accordingly, the Court amends the automated call class definition as follows:

> **Automated Call Class**: All persons or entities in the United States who, on or after four years before the filing of this action received a call to their cellular telephone with a prerecorded message from 888-364-6330 that was made by or on behalf of Defendants.

## II.    DEFENDANTS' MOTION TO STRIKE

Before turning to the legal standard for class certification, the Court first addresses Defendants' motion to strike as untimely the Reiten Declaration, and exhibits attached thereto, and Plaintiffs' Motion for Class Certification. (Defs.' Opp'n 16:2–16.) Plaintiffs filed the Reiten Declaration and accompanying exhibits shortly after the September 5, 2014 filing deadline. Five days later, on September 10, 2014, Plaintiffs curiously withdrew their original Motion for Class Certification and replaced as an attachment to the notice of withdrawal a "substitute" Motion for Class Certification. (ECF No. 23; ECF No. 26.) Defendants argue that Plaintiffs' withdrawal and resubmission of the Motion for Class Certification on September 10, 2014 prejudiced Defendants by "shorten[ing] the time allowed for Defendants to respond." (Defs.' Opp'n 16:12–13.)

Although the Court does not condone untimely filings, and will not hesitate to strike filings as untimely when circumstances warrant, the Court finds that in this case Defendants suffered no prejudice due to Plaintiffs' tardiness. The Reiten Declaration was filed five minutes after the filing deadline and a review of the "original" and "substitute" Motions for Class Certification confirm Plaintiffs' assertion that the substitute motion addresses typographical and other minor errors in the original filing.

1   Under these circumstances, the Court is convinced that Plaintiffs' actions—while not

2   an exemplar of professional lawyering—did not constitute bad faith and did not

3   impact the substance of Defendants' response. Accordingly, the Court denies

4   Defendants' motion to strike. *See Grabenstein v. A.O. Smith Corp.*, No. MDL 875,

5   2:11-CV-63929-ER, 2012 WL 2849389, at *1 (E.D. Penn. Apr. 2, 2012) (denying a

6   motion to strike an untimely filing "in light of the lack of prejudice to Plaintiff and the

7   Court's significant interest in deciding cases on the merits"); *Adams v. City of Laredo*,

8   No. L-08-165, 2011 WL 1988750, at *4 n. 6 (S.D. Tex. May 19, 2011) (denying

9   motions to strike filings as untimely where the delay was minimal and neither party

10  was prejudiced).

11  ## III.   LEGAL STANDARD FOR CLASS CERTIFICATION

12          Class actions are governed by Federal Rule of Civil Procedure 23. Under Rule

13  23, the party seeking class certification must meet the four prerequisites of Rule

14  23(a)—numerosity, commonality, typicality, and adequacy—and at least one of the

15  requirements of Rule 23(b). *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80

16  (9th Cir. 2011). Here, Plaintiffs rely on Rule 23(b)(3), which is satisfied if the court

17  finds that common issues predominate over individual ones, and that a class action is

18  superior to other available methods for adjudicating the controversy. Fed. R. Civ. P.

19  23(b)(3). The party seeking class certification bears the burden of demonstrating that

20  the Rule 23(a) and Rule 23(b) requirements have been met. *Wal-Mart Stores, Inc. v.

21  Dukes*, 564 U.S. — , 131 S.Ct. 2541, 2551 (2011); *Zinser v. Accufix Research Inst.,

22  Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001) (citation omitted).

23          Apart from the express requirements of Rule 23, federal courts have also held

24  that a class must be "adequately defined and clearly ascertainable" to be certified.

25  *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679–80 (S.D. Cal. 1999). "A class is

26  ascertainable if it is defined by objective criteria and if it is administratively feasible

27  to determine whether a particular individual is a member of the class." *Bruton v.

28  Gerber Prod. Co.*, No. 12-CV-02412-LHK, 2014 WL 2860995, at *4 (N.D. Cal. June

– 7 –

23, 2014); *see also Moreno v. AutoZone, Inc.*, 251 F.R.D. 417, 421 (N.D. Cal. 2008) ("A class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having the right to recover based on the description.") (citation omitted), *vacated on other grounds*, No. CV 05-4432 CRB, 2009 WL 3320489. Although a party seeking class certification must demonstrate that the class is readily identifiable, "the class need not be so ascertainable that every potential member can be identified at the commencement of the action." *Guzman v. Bridgepoint Educ., Inc.*, 305 F.R.D. 594 (S.D. Cal. 2015) (citation omitted). However, if a court must substantially investigate the merits of individual claims to determine class membership, or if membership in the class depends upon subjective factors such as a prospective member's intent or state of mind, then the class likely lacks ascertainability and class certification is improper. *Hanni v. Am. Airlines, Inc.*, No. C 08-00732 CW, 2010 WL 289297, at *9 (N.D. Cal. Jan. 15, 2010); *Schwartz*, 183 F.R.D. at 679.

District courts have broad discretion in deciding whether to certify a class. *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010) ("The decision to grant or deny class certification is within the trial court's discretion."); *Armstrong v. Davis*, 275 F.3d 849, 871 n. 28 (9th Cir. 2001) ("Federal Rule of Civil Procedure 23 provides district courts with broad discretion to determine whether a class should be certified[.]"), *abrogated on other grounds*, *Johnson v. California*, 543 U.S. 499 (2005). In exercising this discretion, a trial court must conduct a "rigorous analysis" to ensure the Rule 23 requirements have been satisfied. *Dukes*, 564 U.S. — , 131 S.Ct. at 2551. Although this analysis should not resolve the merits of plaintiff's underlying claim, the court must consider the merits if the merits overlap with the Rule 23 requirements. *Id.*, 131 S.Ct. at 2551–52; *Comcast Corp. v. Behrend*, 569 U.S. —, 133 S.Ct. 1426, 1432 (2013); *Ellis*, 657 F.3d at 980. Finally, a district court reviewing a motion for class certification "is required to consider the nature and range of proof

necessary to establish [the] allegations" of the complaint, even as it "is bound to take the substantive allegations of the complaint as true." *In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 691 F.2d 1335 (9th Cir. 1982) (citing *Blackie v. Barrack*, 524 F.2d 891, 901 n. 7 (9th Cir. 1975)).

## IV.   ANALYSIS

Defendants oppose Plaintiffs' Motion for Class Certification on the grounds that the proposed classes lack ascertainability, fail to satisfy the Rule 23(a) prerequisites of numerosity, commonality, typicality and adequacy, and fail to meet the predominance and superiority requirements of Rule 23(b)(3). We consider Defendants' arguments *in seriatim*.

### A.   Ascertainability

Plaintiffs suggest that the junk fax class is ascertainable because (1) the class is defined by reference to objective criteria, namely, aliases used on the fax advertisements that are traceable to Capital Alliance and (2) the class can be identified by using call logs to determine the unique numbers that called the toll-free numbers listed on the fax advertisements, and then using reverse look-up technology to identify the persons to whom the faxes were sent. (Pls.' Mot. 4:19–26.) Defendants argue, somewhat obliquely, that this is insufficient because "Plaintiffs have produced only phone numbers of callers from various call records" with "no evidence connecting these callers to Defendants, or to Defendants' third party vendors." (Defs.' Opp'n 7:9–11.) Defendants further claim that "there is no evidence that any of these callers [listed in the call records] ever received a fax." (Defs.' Opp'n 7:11–12.) Underlying Defendants' otherwise conclusory objections is the theory that ascertainability cannot be met here because none of the fax advertisements at issue actually listed the name "Capital Alliance."

Defendants' arguments are unavailing. First, Plaintiffs are not required to precisely identify every potential member of the class to meet the standard for ascertainability. Plaintiffs need only proffer objective criteria that makes identification

of the class administratively feasible. *Bruton*, 2014 WL 2860995, at *4. This Plaintiffs have done. Plaintiffs assert that at least eleven different aliases used on the fax advertisements are traceable to Capital Alliance, and offer evidence—in the form of exhibits, call logs, and affidavits—demonstrating this connection. (Pls.' Mot. 4:8–6:24.) Plaintiffs then define the class with reference to these eleven aliases, providing a straightforward means of determining membership in the putative class: persons who were sent an unsolicited fax advertisement bearing the name of one of the eleven alleged Capital Alliance aliases are members; persons who were not sent a fax advertisement with one of these aliases are not members. Defendants cannot defeat ascertainability simply because they might have taken additional steps to disguise their connection to the advertisements.

Second, Plaintiffs' intent to use reverse look-up technology to identify persons who called the toll-free numbers listed on the fax advertisements is an objective approach that reinforces the ascertainability of the class. *Booth v. Appstack, Inc.*, No. C13-1533JLR, 2015 WL 1466247, at *4 (W.D. Wash. Mar. 30, 2015) (finding TCPA class ascertainable when plaintiffs intended to rely on telephone carrier records and reverse look-up directories to identify class members); *Kristensen v. Credit Payment Serv.*, 12 F.Supp.3d 1292 (D. Nev. 2014) (explaining that data from a cellular telephone provider's call records is objective criteria that can be used to identify individual class members); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 WL 2581324, at *4 (N.D. Ill. Aug. 20, 2009) (finding TCPA class ascertainable because "[plaintiff] may use the log and fax numbers to 'work backwards' to locate and identify the exact entities to whom the fax was sent"). Defendants argue that there is no evidence that any of the unidentified callers from the call logs ever received a fax, but Defendants offer no theory, or even assertion, that the numbers listed on the fax advertisements could have come from somewhere else. Furthermore, to the extent that a number listed on one of the fax advertisements was dialed by a person in error, that person will not qualify as a class member because the class is ultimately defined

as persons who were sent a fax bearing the name of a Capital Alliance alias. Accordingly, the Court finds the proposed junk fax class sufficiently definite to meet the ascertainability requirement.

Plaintiffs' proposed automated call class also meets the requirement for ascertainability. As with the junk fax class, Plaintiffs propose to use reverse look-up technology to identify potential class members who received a call from 888-364-6330, the toll-free number Plaintiffs trace to Capital Alliance. (Pls.' Mot. 25:1–9.) Defendants argue that the automated call class is not ascertainable because there is no evidence that unknown class members received calls to their cell phone as opposed to their residential line. (Defs.' Opp'n 12:9–13.) Although this argument has merit, it is largely beside the point given the Court's responsibility to ignore Plaintiffs' attempt to expand the automated call class. As the Court explains above, the automated call class under review for certification is limited to persons who received a prerecorded voice call to their cell phone. These call recipients are readily identifiable using the same reverse look-up approach that Plaintiffs plan to use to identify members of the junk fax class. Thus, Defendants' challenge to the automated call class on ascertainability grounds fails.

In sum, the Court finds that both the junk fax class and automated call class are readily ascertainable.

**B.    Rule 23(a)(1)–Numerosity**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although there is no absolute threshold, courts generally find numerosity satisfied when the class includes at least forty members. *Gomez v. Rossi Concrete, Inc.*, 270 F.R.D. 579, 588 (S.D. Cal. 2010); *Celano v. Marriott Int'l, Inc.,* 242 F.R.D. 544, 549 (N.D. Cal. 2007) ("[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer."). Numerical threshold aside, the central question underlying the numerosity

requirement "is whether Plaintiffs have sufficiently identified and demonstrated the existence of the numbers of persons for whom they speak." *Schwartz*, 183 F.R.D. at 680–81. "Plaintiffs must show some evidence of or reasonably estimate the number of class members." *Id*. at 681.

Here, Defendants argue that Plaintiffs have not satisfied numerosity because "Plaintiffs submit no actual evidence that Defendants are linked to the alleged class members." (Defs.' Opp'n 11:24–25.) That argument runs contrary to the record. Plaintiffs have presented substantial, if imperfect, evidence distilling the number of unique telephone numbers associated with the unsolicited fax advertisements allegedly sent on behalf of Capital Alliance. According to Plaintiffs, this evidence indicates that the junk fax class surpasses 450,000 members. (Hoover Decl. 9–13.) Even if this overstates the case, the most conservative estimate limited to unique telephone calls made to toll-free numbers directly linked to Capital Alliance aliases still yields more than 150,000 potential class members. (Hoover Decl. 9:23–10:4.) This reasonable estimate, rooted in evidence, is more than sufficient to satisfy numerosity.

With respect to the automated call class, Plaintiffs have presented evidence identifying more than 33,000 unique telephone numbers that called the toll-free number responsible for the prerecorded voice call to Plaintiff Chick. (Hoover Decl. 10:24–11:4.) This potential class of more than 33,000 presumably includes persons who received calls to their residential telephone lines, and who thus would not be part of the automated call class under review by the Court. But even if only a fraction of these 33,000 unique telephone numbers are assigned to a cell phone, and thus eligible for class membership, Plaintiffs have clearly met their burden to demonstrate numerosity. *See Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 266 (N.D. Cal. 2011) ("A class of one thousand members 'clearly satisfies the numerosity requirement.'") (citation omitted). Accordingly, the Court finds that the numerosity requirement has been satisfied as to both the junk fax class and automated call class.

### C.     Rule 23(a)(2)–Commonality

To satisfy Rule 23(a)(2), a party seeking class certification must demonstrate that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement will be met only if plaintiff shows that "the class members have suffered the same injury." *Dukes*, 564 U.S. — , 131 S.Ct. at 2551 (quotation marks and citation omitted). This does not mean that the claims of every member of the putative class must stem from identical factual circumstances. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("The existence of shared legal issues with divergent factual predicates is sufficient [for commonality], as is a common core of salient facts coupled with disparate legal remedies within the class."). Instead, the core concern of the inquiry is that the common contention at the heart of the claims be capable of classwide resolution—"which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Meyer v. Portfolio Recovery Assoc., LLC*, 707 F.3d 1036, 1041–42 (9th Cir. 2012) (quoting *Dukes*, 564 U.S. — , 131 S.Ct. at 2551). "What matters to class certification" is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. — , 131 S.Ct. at 2551.

Plaintiffs assert that the core issue underlying each of the proposed classes is whether Capital Alliance engaged in the prohibited conduct. According to Plaintiffs, the common questions of law and fact include: (1) whether Capital Alliance, or persons acting on its behalf, sent unsolicited fax advertisements or made automated calls using a prerecorded voice message; (2) whether Defendants' conduct was willful or negligent; and (3) whether Defendant Narin is directly or vicariously liable for the fax advertisements sent or the automated calls made. (Pls.' Mot. 20–22.) Defendants argue that Plaintiffs do not satisfy the commonality requirement because "there is no evidence that the alleged facts are common to all proposed class members, nor is there sufficient evidence that the claims of the proposed class members arise out of a

common nucleus of operative facts." (Defs. Opp'n 2:21–24; 14:18–19.) In Defendants' view, this purported lack of evidence means that the TCPA "cannot be a common nucleus of law in the case." (Defs.' Opp'n 14:24–25.)

Defendants' argument, again, runs contrary to the record. Plaintiffs' evidence is clearly sufficient to establish commonality. Plaintiffs have presented testimony and exhibits to connect the various aliases and toll-free numbers used on different fax advertisements to Capital Alliance. (*See generally* Hoover Decl.) They have presented call-log evidence demonstrating that hundreds of thousands of other persons may have been on the receiving end of one or more of these fax advertisements. Such evidence and allegations provide the thread of common facts that the commonality requirement demands. *See, e.g.*, *Malta v. Fed. Home Loan Mortg. Corp.*, 2013 WL 444619, at *2 (S.D. Cal. Feb. 5, 2013) (finding commonality satisfied where "the proposed class members' claims stem from the same factual circumstances"). Furthermore, whether Capital Alliance, or persons acting on its behalf, sent the fax advertisements in violation of the TCPA clearly involves a common question of law that will drive resolution of the classwide claims.

With respect to the automated call class, Plaintiffs have submitted evidence that more than 30,000 persons received a prerecorded voice call from 888-364-6330, a number allegedly traceable to Capital Alliance. (Hoover Decl. 10:24–11:4.) This evidence demonstrates a common nucleus of operative facts binding together members of the automated call class. Whether these calls were made by or on behalf of Capital Alliance is a question for which the answer will determine the claims of the putative class members. This is all that commonality requires.

In the case of both the junk fax class and automated call class, the Court finds that classwide proceedings will "generate common answers" likely to "drive the resolution of the litigation." *Dukes*, 564 U.S. — , 131 S.Ct. at 2551. Accordingly, Plaintiffs have satisfied the commonality requirement as to both classes.

**D.    Rule 23(a)(3)–Typicality**

Rule 23(a)(3) requires that "the claims and defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The standard is a "permissive" one and requires only that the claims of the class representatives be "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2009) (citation omitted); *see also Hanon v. Dataprod. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508.

Plaintiffs argue that their claims are typical of the claims of the unnamed class members because "they arise from the same conduct of Defendants"—alleged violations of the TCPA—"and are based on the same legal theories." (Pls.' Mot. 18:11–14.) This Court agrees with Plaintiffs. Plaintiff Bee's claims are typical of the junk fax class because she alleges that Defendants sent the same or similar unsolicited fax advertisements to putative class members. Plaintiff Chick's claims are typical of the automated call class, as amended by the Court, because he alleges that other unnamed members of class received the same prerecorded voice call from the same toll-free number traceable to Defendants. Under these circumstances, the typicality requirement is satisfied. *See, e.g.*, *Knutson*, 2013 WL 4774763, at *8 (finding typicality satisfied where Plaintiffs asserted they received autodialed and/or prerecorded calls from Defendants, "and the proposed class [was] defined to include individuals who received the same type of calls"); *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 648 (W.D. Wash. 2007) (finding typicality satisfied where named plaintiff

and putative class members allegedly received unsolicited fax advertisements from defendant).

Defendants argue that Plaintiff Bee's claims are not typical of other members of the junk fax class because there is no evidence that the unsolicited fax advertisements were sent by Capital Alliance or by a third-party vendor working on its behalf. (Defs.' Opp'n 12:19–25.) As the Court explains above, however, it is simply not the case that Plaintiffs have failed to present such evidence. To the contrary, Plaintiffs have produced evidence linking the aliases and toll-free numbers listed on the fax advertisements to Capital Alliance, and the putative junk fax class is limited to recipients of those same types of faxes. Thus, Plaintiff Bee's claims are typical of the claims of the putative junk fax class. Defendants also argue, with somewhat more justification, that Plaintiff Chick's claims cannot be typical of the automated call class because he did not receive a prohibited call to his residential line, but rather to his cell phone. (Defs.' Opp'n 12:9–18.)  However, in light of the Court's refusal to allow Plaintiffs to expand the scope of the automated call class to include persons who received a call to their residential line, Defendants' argument is unavailing. The automated call class under review consists only of persons who received a prohibited call to their cell phone from a single toll-free number allegedly traceable to Capital Alliance. This is the precise injury and course of conduct that underlies Plaintiff Chick's claim. Thus, Plaintiff Chick's claims are typical of the claims of the automated call class.

In sum, the Court finds that Plaintiffs have satisfied the typicality requirement as to both the junk fax class and automated call class.

**E.    Rule 23(a)(4)–Adequacy of Representation**

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts

of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis*, 657 F.3d at 985 (internal quotation marks and citation omitted). This requirement ensures due process for absent class members who, upon entry of judgment in a class proceeding, must forfeit their right to bring an individual claim. *See Hanlon*, 150 F.3d at 1020 ("To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them.") (citation omitted); *see also* Jay Tidmarsh, *Rethinking Adequacy of Representation*, 87 Tex. L. Rev. 1137, 1139 (2009) ("Class actions constitute an exception to the principle of individual autonomy, and adequate representation—traditionally understood to require the avoidance of conflicts of interest or collusion—acts as the antidote to the self-interest of the class representative and class counsel.").

Here, Plaintiffs have met their burden to demonstrate adequacy of representation. First, the interests of the representative parties are clear—to receive compensation for alleged violations of the TCPA and to deter Defendants from engaging in the alleged conduct—and are aligned with the interests of the putative class as a whole. Second, there is nothing to suggest that the named plaintiffs or their counsel have any conflicts of interest with other class members such that class certification raises due process concerns. Third, there is no indication that the named plaintiffs and their counsel lack the incentive to prosecute this action vigorously— indeed, they have done so thus far. Finally, Plaintiffs' counsel have provided undisputed documentation of their experience litigating consumer class actions in general, and TCPA class actions in particular, to demonstrate their competency. (Terrell Decl. 2–5.); *see Knutson*, 2013 WL 4774763, at *8 (finding adequacy satisfied based partly upon "Plaintiffs' unchallenged representation that their counsel is competent in prosecuting class actions and is experienced in TCPA litigation"). All of these factors support a finding of adequacy.

Defendants' only challenge on adequacy grounds is that neither Plaintiff Bee

nor Plaintiff Chick can adequately represent the interest of the proposed classes because neither has produced evidence that they have suffered an injury under the TCPA. (Defs.' Opp'n 13:11–18.) This is factually incorrect. As the Court's recitation of the evidence in other sections of this order demonstrates, Plaintiffs have produced extensive evidence supporting an allegation that Plaintiffs have suffered an injury under the TCPA due to Defendants' conduct. Defendants' bare assertion to the contrary does not undercut the showing of adequacy made here. Accordingly, the Court finds that Plaintiffs have satisfied the adequacy requirement as to both classes.

### F.      Rule 23(b)(3)–Predominance and Superiority

#### 1.      Predominance

"The predominance inquiry focuses on 'the relationship between the common and individual issues' and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (citing *Hanlon*, 150 F.3d at 1022). The focus of the inquiry is not the presence or absence of commonality as it is under Rule 23(a)(2). Instead, the predominance requirement ensures that common questions "present a significant aspect of the case" such that "there is clear justification"—in terms of efficiency and judicial economy—for resolving those questions in a single adjudication. *Hanlon*, 150 F.3d at 1022 (citation omitted); *see also Vinole*, 571 F.3d at 944 ("[A] central concern of the Rule 23(b)(3) predominance test is whether adjudication of common issues will help achieve judicial economy."); *Zinser*, 253 F.3d at 1189 ("Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy.") (citation omitted). This requirement is satisfied when a common nucleus of facts and law is the central feature of the litigation, and when "Plaintiffs have shown that there are plausible classwide methods of proof available to prove their claims." *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 487 (N.D. Cal. 2011) (citation omitted); *see also Hanlon*, 150 F.3d at 1022. However, "[c]ommon questions do not predominate if the resolution

of an overarching common issue breaks down into an unmanageable variety of individual legal and factual issues leading to an inordinate number of evidentiary hearings." *Kristensen*, 12 F.Supp.3d at 1306 (citation omitted).

The Court finds that Plaintiffs have demonstrated that common issues—including whether Defendants were responsible for the unsolicited fax advertisements and automated calls; whether Defendants' marketing practices violated the TCPA; and whether Defendant Narin can be held directly or vicariously liable—predominate in this case. These questions can be answered with generalized evidence applicable on a class-wide basis; individualized inquiries specific to each class member would not be required to establish liability. With respect to the junk fax class, Plaintiffs' theory is that Capital Alliance or its third-party vendor sent unsolicited fax advertisements to members of the class using aliases that obscured Defendants' involvement. The generalized proof offered by Plaintiffs is the striking similarity of the various fax advertisements and the frequency with which toll-free numbers listed on these fax advertisements connected to a Capital Alliance representative. Thus, both the legal theory and supporting evidence are applicable to the entire class. Under these circumstances, there is little danger that establishing liability will require a series of individualized inquiries. *See Wolin v. Jaguar Land Rover N. Am., LLC.*, 617 F.3d 1168, 1173 (9th Cir. 2010) (holding that a putative class action satisfied predominance when the allegations were susceptible to proof by generalized evidence).

The same analysis holds with respect to the automated call class. Plaintiffs' theory is that Defendants initiated, or caused to be initiated, automated calls using a prerecorded voice, specifically from the number 888-364-6330. The evidence offered is a declaration that the number, when called, connects to Capital Alliance, and call records containing the unique numbers that connected to the toll-free number. Thus, there is a common nucleus of fact and law at the core of this litigation, and there is no indication that individualized inquiries will be necessary to resolve the claims.

The Court is especially confident that predominance has been satisfied in this

1    case because Defendants neither contend, nor provide any evidence, that they had an

2    established business relationship ("EBR") with recipients of the faxes, or received

3    prior express consent from recipients of the automated calls. (Reiten Decl. 73:3–14.).

4    Under the TCPA, a person may, under certain conditions, send unsolicited fax

5    advertisements to a person with whom the sender has an EBR, and may initiate

6    automated calls to a person's cell phone if the recipient has provided prior express

7    consent. *See* 47 U.S.C. § 227(b)(1)(C); 47 U.S.C. § 227(b)(1)(A).  Thus, the existence

8    of an EBR or prior express consent raises the possibility of individual differences

9    among class members. *See, e.g.*, *Connelly v. Hilton Grand Vacations Co., LLC*, 294

10   F.R.D. 574, 578 (S.D. Cal. 2013) (holding predominance requirement not satisfied

11   where the context of class members' interactions with Defendant was sufficiently

12   varied to require individual evaluation of whether express consent was provided).

13   Here, however, Defendants make no showing that the EBR or express consent

14   exemption applies, and they certainly do not argue that such individual questions

15   outweigh the common issues. Where a party has not submitted any evidence of an

16   EBR or express consent, courts will not presume that resolving such issues requires

17   individualized inquiries. *See, e.g.*, *Kristensen*, 12 F.Supp.3d at 1307 ("[C]ourts should

18   ignore a defendant's argument that proving consent necessitates individualized

19   inquiries in the absence of any evidence that express consent was actually given.");

20   *Stern v. DoCircle, Inc.*, No. SACV 12-2005 AG (JPRx), 2014 WL 486262, at *3 (C.D.

21   Cal. Jan. 29, 2014) ("Based on the facts before it now, it does not appear that the Court

22   will have to make individualized determinations of consent. While such

23   determinations would be necessary if the parties presented individualized evidence of

24   consent, they haven't done so."). Accordingly, the Court finds that common issues

25   predominate.[3]

26

27   ────────────────

     [3] Defendants curiously argue that predominance has not been met because the claims of individual

28   class members are governed by different state laws. (Defs.' Opp'n 14:7–17.) This argument is
     without merit. Plaintiffs bring this action alleging violation of the TCPA, a federal statute, for
     which variations in state law are irrelevant.

### 2. Superiority

Rule 23(b)(3) also requires Plaintiffs to demonstrate "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation," and it is superior "if no realistic alternative exists." *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996). "This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023. Considerations relevant to this inquiry include "the class members' interest in individually controlling the prosecution or defense of separate actions" and "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A); Fed. R. Civ. P. 23(b)(3)(D).

Plaintiffs argue that a class action is a superior method for adjudicating the claims presented here because most class members would find it prohibitively costly to litigate their claims individually. (Pls.' Mot. 24:6–18.) Plaintiffs contend that the TCPA's damages provision—allowing claimants to recover up to $500 for each violation, or $1,500 for each willful violation—is generally insufficient to incentivize individual litigation. (*Id.*).

This Court agrees with Plaintiffs. The average consumer considering whether to bring an individual action alleging a TCPA violation confronts a classic negative-value suit scenario: the cost of litigating an individual claim outweighs the potential gains. *See* Tidmarsh, *supra*, at 1167–68 (defining negative-value suit). This disparity between litigation costs and prospective recovery provides "the most compelling rationale for finding superiority in a class action." *Smith v. Microsoft Corp.*, 297 F.R.D. 464, 468–69 (S.D. Cal. 2014) (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996)); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring

a solo action prosecuting his or her rights."); *Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). Although Defendants apparently contend that the class members here have sufficient incentive to pursue a solo action, this assertion is unpersuasive. While an individual does have the option of bringing a TCPA claim in state small claims court, thus avoiding the costs of an attorney, that alternative does not provide an equally effective or efficient method of handling the instant case. Here, Defendants have allegedly concealed their role in the prohibited conduct through use of nearly a dozen aliases and difficult to trace toll-free numbers. This fact scenario—one that requires something beyond a basic reading of the TCPA and its unsettled case law—is thus ill-suited for small claims litigation. Under these circumstances, $500 (or even $1,500) for each violation is unlikely to incentivize the average claimant to incur the opportunity costs of time, effort, and attention to pursue her claim on an individual basis.

Defendants also challenge superiority on the grounds that the "manageability of the class" will be "exceedingly difficult" because "individualized issues of liability and damages will devolve into multiple mini-trials." (Defs.' Opp'n 15:27–16:1.). This Court disagrees. As the Court explains in its discussion of the predominance requirement, common issues dominate this litigation. Defendants have identified no individual issue of liability or damages that "outweigh the benefits of considering common issues in one trial." *Zinser*, 253 F.3d at 1192. Indeed, Defendants have not specified any individual issue of liability or damages *at all*, let alone individual issues pervasive enough to render class certification inappropriate. To the extent individualized inquiries might arise, the Court can either handle such issues in the context of classwide proceedings or, if necessary, revisit certification. *Kristensen*, 12 F.Supp.3d at 1307 (finding superiority requirement met in a putative TCPA class action where the Court could review individual affidavits averring lack of consent to receive text messages sent on behalf of Defendant to Plaintiff's cell phone).

1  Accordingly, the Court finds that Plaintiffs have met the superiority requirement as to
2  both classes.

3  **IV.    CONCLUSION & ORDER**

4  Jurists and commentators have long debated the merits of the modern class
5  action and the public policies behind Rule 23. *See* David Marcus, *The History of the*
6  *Modern Class Action, Part I: Sturm Und Drang, 1953–1980*, 90 Wash. U. L. Rev. 587
7  (2013) (defining the contours of the debate as one between advocates of a "regulatory
8  conception" of Rule 23 versus supporters of a more limited "adjectival conception" of
9  the Rule). It is the view of this Court that the instant case highlights one of the
10 strongest justifications for the class action device: its regulatory function. *See* Marcus,
11 *supra*, at 590 (explaining that proponents of the "regulatory conception" of Rule 23
12 view class actions as an important supplement to public administration and as a device
13 for maximizing regulatory efficacy). A statute such as the TCPA, which provides for
14 a relatively small recovery for individual violations but is designed to deter conduct
15 directed against a large number of individuals, can be effectively enforced only if
16 consumers have available a mechanism that makes it economically feasible to bring
17 their claims. Without the prospect of a class action suit, corporations balancing the
18 costs and benefits of violating the TCPA are unlikely to be deterred because individual
19 claims will not impose the level of liability that would outweigh the potential benefits
20 of violating the statute. This, of course, does not relieve Plaintiffs of their burden to
21 meet the requirements for class certification under Rule 23. But Rule 23 analysis
22 should be conducted in light of the objectives of the statute at issue, not in a vacuum
23 devoid of policy context. *See, e.g.*, *Bateman*, 623 F.3d at 716 ("While Rule 23 affords
24 district courts wide discretion in deciding whether to certify a class, the district court
25 was obliged to exercise that discretion in light of the objectives of [the Fair and
26 Accurate Credit Transactions Act].") In the context of the TCPA, the class action
27 device likely is the optimal means of forcing corporations to internalize the social
28 costs of their actions. *See, e.g.*, Myriam Gilles & Gary B. Friedman, *Exploding the*

*Class Action Agency Costs Myth: The Social Utility of Entrepreneurial Lawyers*, 155 U. Pa. L. Rev. 103 (2006) (arguing for the primacy of a deterrence-centric approach to class actions that views deterrence of corporate wrongdoing as the class action's central goal).

Plaintiffs here have met the requirements of Rule 23(a) and Rule 23(b)(3). Considerations of public policy only confirm what the legal analysis reveals. Accordingly, the Court **GRANTS** Plaintiffs' Motion for Class Certification as set forth below and **ORDERS** the following:

1. The following Rule 23(b)(3) classes are **CERTIFIED**:

   *Junk Fax Class*

   All persons or entities in the United States who, on or after four years before the filing of this action, were sent by or on behalf of Defendants one or more unsolicited advertisements by telephone facsimile machine that bear the business name Community, Community Business Funding, Fast Working Capital, Snap Business Funding, Zoom Capital, Nextday Business Loans, 3DayLoans, Bank Capital, FundQuik, Prompt, or Simple Business Funding.

   *Automated Call Class*

   All persons or entities in the United States who, on or after four years before the filing of this action, received a call on their cellular telephone with a prerecorded voice message from the number 888-364-6330 that was made on or behalf of Defendants.

2. Plaintiff Bee, Denning, Inc. is appointed class representative of the junk fax class.

3. Plaintiff Gregory Chick is appointed class representative of the automated call class.

4. Pursuant to Federal Rule of Civil Procedure 23(g), the firm Terrell Marshall Daudt & Willie PLLC is appointed as class counsel.

5. Pursuant to Federal Rule of Civil Procedure 23(c)(2)(B), the parties shall

meet and confer, and submit to the Court an agreed-upon form of class notice that will advise individual members of, among other things, the nature of the action, the relief sought, the right of class members to intervene or opt out, and the binding effect of a class judgment on members under Rule 23(c)(3). The parties shall also jointly submit a plan for dissemination of the proposed notice. The proposed notice and plan of dissemination shall be filed with the Court on or before **December 1, 2015**.

Plaintiffs' *ex parte* motion for oral argument is **DENIED**. Defendants' Motion to Strike is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  September 24, 2015**

**Hon. Cynthia Bashant**
**United States District Judge**

13cv2654