1
2
3
4
5
6
7
8
9

10           **UNITED STATES DISTRICT COURT**

11           **SOUTHERN DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| BEE, DENNING, INC., *individually and on behalf of all others similarly situated*, | Case No. 13-cv-02654-BAS(WVG) |
| Plaintiff, | **ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS** |
| v. | |
| CAPITAL ALLIANCE GROUP, *et al.*, | **[ECF No. 71]** |
| Defendant. | |

13
14
15
16
17
18

19

| | |
|---|---|
| DANIELA TORMAN, | Consolidated with: |
| Plaintiff, | Case No. 14-cv-02915-BAS(WVG) |
| v. | |
| CAPITAL ALLIANCE GROUP, *et al.*, | |
| Defendants. | |

20
21
22
23
24
25
26
27

28

On November 5, 2013, Plaintiff Bee, Denning, Inc., d/b/a Practice Performance Group ("Plaintiff Bee") commenced this class action, individually and on behalf of others similarly situated, against Defendant Capital Alliance Group ("Capital Alliance") seeking relief for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). (Compl. ¶¶ 1.1, 7.2–7.4, ECF No. 1.) One month later, Plaintiff Bee amended the complaint to add Narin Charanvattanakit ("Defendant Narin") as a Defendant and Gregory Chick as a Plaintiff. (Am. Compl. ¶¶ 1.1, 2.2, 2.4–2.6, ECF No. 6.) On June 8, 2016, this Court granted a renewed motion to consolidate this action with a related case—*Daniela Torman v. Capital Alliance Group*, Case No. 14-cv-02915-BAS(WVG)—because of common questions of fact and law. (Order Grant. Renew. Mot. Consolidate 1:21–22, ECF No. 59.) Bee, Denning, Inc.; Gregory Chick; and Daniela Torman (collectively, "Plaintiffs") move unopposed by Capital Alliance Group and Narin Charanvattanakit (collectively, "Defendants") for preliminary approval of a settlement reached between the parties and certification of settlement classes. (Pls.' Mot. Prelim. Approv. ("Pls.' Mot."), ECF No. 71.)

The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the following reasons, the Court **GRANTS** Plaintiff's Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Classes.

## I.     PROPOSED SETTLEMENT

### A.     Settlement Class

Following nearly three years of litigation, including extensive discovery, a mediation, and a settlement conference over which the Honorable Judge William V. Gallo presided, the parties have reached a proposed settlement of this matter. (Pls.' Mot. 4:11–19, 5:10–12; Class Action Settlement Agreement ("Settlement

Agreement") Ex. 1, ECF No. 71-3.)[1] The Settlement Agreement applies to two proposed Settlement Classes defined as follows:

> A.  Junk Fax Class:
>
> All persons or entities in the United States who, on or after November 5, 2009, were sent by or on behalf of Defendants one or more unsolicited advertisements by telephone facsimile machine that bear the business name Community, Community Business Funding, Fast Working Capital, Snap Business Funding, Zoom Capital, Nextday Business Loans, 3DayLoans, Bank Capital, FundQuik, Prompt, or Simple Business Funding.
>
> B.  Automated Call Class:
>
> All persons or entities in the United States who, on or after November 5, 2009, received a call on their cellular telephone with a prerecorded voice message from the number 888-364-6330 that was made by or on behalf of Defendants.

(Settlement Agreement §§ 2.1.A, 2.1.B.) The Parties estimate the "Junk Fax Class" consists of an estimated 558,022 Class Members. (Pls.' Mot. 17:16–17.) The Parties estimate the "Automated Call Class" consists of an estimated 9,424 Class Members. (*Id.* 17:17–18.) A Class Member is a person who is a member of one of the Settlement Classes stipulated in the Settlement Agreement. (Settlement Agreement § 1.2.) The Settlement Class is defined as one of the two Settlement Classes the Parties have consented to for purposes of the settlement only, as defined in section 2.1. (*Id.* § 1.13.) To represent the Settlement Classes, the Parties agree to seek appointment of Plaintiffs as Class Representatives and Plaintiffs' counsel—Beth E. Terrell and Terrell Marshall Law Group, PLLC, Candice E. Renka and Marquis Aurbach Coffing, and Gary E. Mason, Whitfield Bryson & Mason, LLP—as Class Counsel. (*Id.* § 1.1.)

//

//

//

//

---

[1] Capitalized terms used in this Order but not defined herein have the meanings ascribed to them in the Settlement Agreement.

**B.    Settlement Relief**

Defendants have insufficient resources to grant effective monetary relief to the Class Members. (Settlement Agreement § 2.2.A; Pls.' Mot. 4:20–25.) Consequently, the Settlement Agreement provides only injunctive relief to the Settlement Classes (Settlement Agreement § 2.2; Pls.' Mot. 5:1–6, 6:11–20.) Under the Settlement Agreement, the Parties agree that for a period of two years following the effective date, Defendants shall comply with the following:

1. Defendants and Defendants' successors shall establish written procedures for TCPA compliance[;]
2. Defendants and Defendants' successors shall conduct annual training sessions directed to TCPA compliance[;]
3. Defendants and Defendants' successors shall maintain a list of telephone numbers of persons who request not to be contacted[;]
4. Defendants and Defendants' successors shall subscribe to a version of the national do-not-call registry obtained no more than three months prior to the date any call is made (with records documenting such compliance) [;]
5. Defendants and Defendants' successors shall establish internal processes to ensure that Defendants and Defendants' successors do not sell, rent, lease, purchase, or use the do-not-call database in any manner except in compliance with TCPA regulations[;]
6. Defendants and Defendants' successors shall scrub for cellular telephones before making autodialed calls or calls made with an artificial voice or [] prerecorded messages[;]
7. Defendants and Defendants' successors shall not call cellular telephones prior to receipt of the express written permission of the intended recipient, including the intended recipient's signature[;]
8. All prerecorded messages, whether delivered by automated dialing equipment or not, must identify Capital Alliance or any successor entity, and the specific "d/b/a" as the entity responsible for initiating the call, along with the telephone number that can be used during normal business hours to ask not to be called again[;]
9. All fax transmissions that include "unsolicited advertisements" as defined in 47 U.S.C. §[] 227(a)(4) must be preceded by the receipt of the express written permission of the intended recipient, including the intended recipient's signature[;]
10. Defendants and Defendants' successors must maintain records demonstrating that recipients have provided such express permission to send fax advertisements.

(Settlement Agreement §§ 2.2.B.1–2.2.B.10.) Under the Settlement Agreement, the Parties have also agreed to an injunction oversight and reporting procedure defined as follows:

Defendants shall make a bi-annual report to Class Counsel outlining their compliance with the TCPA injunction and any issues that may have

– 4 –

arisen. Defendants agree to submit copies of any putative individual or class action lawsuits filed against them and asserting one or more claims pursuant to the TCPA during the reporting period to Class Counsel beginning 6 months from the date that this agreement is signed and every 6 months thereafter until expiration of the injunction. Reports from Defendants are due on November 18, 2016, May 18, 2017, November 18, 2017, and May 18, 2018.

(*Id.* § 2.2.C.)

## C.     Notice to Settlement Class Members

The Settlement Agreement requires Defendants to hire Heffler Claims Group ("Heffler") to provide notice to Class Members. (Settlement Agreement § 2.7.) The Class Notice stipulated to in the Settlement Agreement requires Defendants to direct Heffler to provide three different forms of notice to the Class Members. (*Id.*) First, Defendants will direct Heffler to provide Class Notice via U.S. mail, in the form and substance set forth in Exhibit B, to States' Attorneys' General for dissemination to the public. (*Id.*) The Class Notice consists of, among other things, a summary of the terms of the Settlement Agreement, a description of the details of the injunctive relief, instructions to Class Members regarding their rights, an explanation of the date and time of the fairness hearing of the settlement, and directions for accessing more information about the settlement. (Settlement Agreement Ex. B.) Second, Defendants will direct Heffler to create and maintain a website that provides information, including court documents, regarding the settlement to the Settlement Class. (Settlement Agreement § 2.7.) Third, Defendants will direct Heffler to create and maintain a call center where the Settlement Class can obtain information. (*Id.*) Defendants shall be responsible for all costs of sending notice of the Class Members as set forth in section 2.7. (*Id.* § 2.6.)

//

//

//

//

### D.    Right to Opt Out or Object and Release of Claims

Only the named Plaintiffs have released all of their claims against Defendants. (Pls.' Mot. 9:14–17.) All other Class Members do not release their rights to pursue individual or collective damages claims against Defendants. (Settlement Agreement Ex. B.) Consequently, no right to opt out or object and release of claims is necessary for Class Members other than the named Plaintiffs.

### E.    Attorneys' Fees and Settlement Costs

To recover its expenses from litigation, Class Counsel will seek from the Court an award of litigation costs in the amount of twenty-two thousand ninety-six dollars ($22,096). (Settlement Agreement § 2.4.) Class Counsel will also seek from the Court for each of the three Plaintiffs—Bee, Denning, Inc., Gregory Chick, and Daniela Torman—in the amount of $4,819 (collectively, $14,457) for his or her individual claim and as an incentive award for his or her services as Class Representative. (*Id.* § 2.3.)

## II.    DISCUSSION

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, Federal Rule of Civil Procedure 23(e) first "require[s] the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Where the "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Stanton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). In these situations, settlement approval "'requires a higher standard of fairness' and 'a more probing inquiry than may normally be required under Rule

23(e).'" *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1026).

In this case, the Court previously amended the class definition of the "Automated Call Class" and certified the two Settlement Classes at issue here under Federal Rule of Civil Procedure 23(b)(3). *See Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D. 614, 619 (S.D. Cal. 2015). The Parties in reaching this Settlement Agreement modified the "Automated Call Class" definition based on the Court's amendment and now bring a motion to certify the two Settlement Classes under Rule 23(b)(2). (Settlement Agreement §§ 2.1.A, 2.1.B; Pls.' Mot. 1:12–16.)

### A.    Class Certification

Before granting preliminary approval of a class-action settlement, the Court must first determine whether the proposed class can be certified. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (indicating that a district court must apply "undiluted, even heightened, attention [to class certification] in the settlement context" in order to protect absentees).

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). In order to justify a departure from that rule, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Id.* (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). In this regard, Federal Rule of Civil Procedure 23 contains two sets of class-certification requirements set forth in Rule 23(a) and Rule 23(b). *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010). "A court may certify a class if a plaintiff demonstrates that all of the prerequisites of Rule 23(a) have been met, and that at least one of the requirements of Rule 23(b) have been met." *Otsuka*

1    *v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 443 (N.D. Cal. 2008).

2        "Rule 23(a) provides four prerequisites that must be satisfied for class

3    certification: (1) the class must be so numerous that joinder of all members is

4    impracticable; (2) questions of law or fact exist that are common to the class; (3) the

5    claims or defenses of the representative parties are typical of the claims or defenses

6    of the class; and (4) the representative parties will fairly and adequately protect the

7    interests of the class." *Otsuka*, 251 F.R.D. at 443 (citing Fed. R. Civ. P. 23(a)). "A

8    plaintiff must also establish that one or more of the grounds for maintaining the suit

9    are met under Rule 23(b), including: (1) that there is a risk of substantial prejudice

10    from separate actions; (2) that declaratory or injunctive relief benefitting the class as

11    a whole would be appropriate; or (3) that common questions of law or fact

12    predominate and the class action is superior to other available methods of

13    adjudication." *Id.* (citing Fed. R. Civ. P. 23(b)).

14        In the context of a proposed settlement class, questions regarding the

15    manageability of the case for trial are not considered. *E.g.*, *Wright v. Linkus Enters.,*

16    *Inc.*, 259 F.R.D. 468, 474 (E.D. Cal. 2009) (citing *Amchem Prods., Inc.*, 521 U.S. at

17    620 ("Confronted with a request for settlement-only class certification, a district

18    court need not inquire whether the case, if tried, would present intractable

19    management problems . . . for the proposal is that there be no trial.") (citation

20    omitted)).

21        The Court considers the threshold issue of whether the Settlement Class is

22    ascertainable and each of the prerequisites for certification in turn below.

23

24        **1.    Ascertainability**

25        Initially, the Court notes the disagreement among courts concerning the

26    ascertainability requirement in the context of Rule 23(b)(2) classes. *Compare Shook*

27    *v. El Paso County*, 386 F.3d 963, 972 (10th Cir. 2004) (holding the lower court erred

28    in requiring ascertainability of a Rule 23(b)(2) class and explaining that "while the

– 8 –

lack of identifiability is a factor that may defeat Rule 23(b)(3) class certification, such is not the case with respect to class certification under Rule 23(b)(2)") *with Jamie S. v. Milwaukee Pub. Schools*, 668 F. 3d 481, 495–97 (7th Cir. 2012) (finding a lack of ascertainability fatal to a Rule 23(b)(2) class certification because the class definition was too indefinite). The majority view, however, appears to favor either a lower standard for the ascertainability requirement or no requirement at all in the 23(b)(2) context. *See, e.g.*, *Shelton v. Bledsoe*, 775 F.3d 554, 561–62 (3d Cir. 2015) (finding the "judicially-created implied requirement of ascertainability . . . inappropriate for (b)(2) classes"); *Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1325–26 (W.D. Wash. 2015) (noting "many courts have determined that [ascertainability] is of less importance or not applicable at all when considering certification under Rule 23(b)(2)").

The majority approach is premised upon the view that there is less need for the procedural safeguard provided by ascertainability in the 23(b)(2) context in contrast with the need for this safeguard in the 23(b)(3) context. *See Shelton*, 775 F.3d at 561–62 (reasoning that "[i]n the context of a (b)(3) class, the requirement that the class be defined in a manner that allows ready identification of class members serves several important objectives that either do not exist or are not compelling in (b)(2) classes"). In particular, whereas a 23(b)(3) class seeking monetary damages requires notice and an opportunity for class members to opt out, a 23(b)(2) class requires neither notice or opt-out rights because the purpose of the latter is "to provide broad injunctive relief to large and amorphous classes not capable of certification under Rule 23(b)(3)." *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 116–117 (E.D.N.Y 2012) (quotations omitted); *Floyd v. City of New York*, 283 F.R.D. 153, 171–72 (S.D.N.Y. 2012) (noting that "[i]t would be illogical to require precise ascertainability in a suit that seeks no class damages"); *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972) (finding that "the actual membership of the class need not . . . be precisely delimited" because "notice to the members of a (b)(2) class is not required"); *Shelton*, 775 F.3d

at 562; *In re Monumental Life Ins. Co.*, 365 F.3d 408, 413 (5th Cir. 2004). Rule 23(b)(2) classes are meant for a much narrower set of circumstances than 23(b)(3) classes and the available relief in a 23(b)(2) class action is indivisible in nature as to all of the class members. *Dunakin*, 99 F. Supp. at 1325–26; *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360–61 (2011). Consequently, ascertainability in the 23(b)(2) context lacks the due-process-reinforcing effects so critical to a 23(b)(3) class action.

Although the Ninth Circuit has not ruled directly on the issue, both the weight of authority and consideration of the particular purpose of 23(b)(2) class actions persuades this Court that ascertainability should not be required when determining whether to certify a class in the 23(b)(2) context. Accordingly, the Court finds ascertainability is not required for the Rule 23(b)(2) classes at issue in this case, and so does not evaluate it further here. The Court notes, however, that even if the Settlement Classes in this case were held to an ascertainability requirement, the outcome would remain unchanged.[2]

## 2.   Numerosity – Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer." *Celano v.*

---

[2] "A class is ascertainable if it is defined by objective criteria and if it is administratively feasible to determine whether a particular individual is a member of the class." *Bruton v. Gerber Prods. Co.*, No. 12-CV-02412-LHK, 2014 WL 2860995, at *4 (N.D. Cal. June 23, 2014) (quotations omitted). This Court previously found the two Settlement Classes at issue to be ascertainable under a Rule 23(b)(3) standard, a higher standard than that which would apply to the Rule 23(b)(2) classes here. *See Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D. 614, 623–24 (S.D. Cal. 2015). In the Rule 23(b)(3) context, this Court found plaintiffs proffered objective criteria that made identification of these classes administratively feasible. *Id.* Under the more flexible standard applied by many courts regarding Rule 23(b)(2) classes, these Settlement Classes satisfy the ascertainability requirement because the class definition consists of objective criteria and it would be administratively feasible to determine who belongs to the class. *Id.; In re Vitamin C Antitrust Litig.*, 279 F.R.D. at 116.

*Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007).

Here, there are two proposed Settlement Classes. The Junk Fax Settlement Class consists of an estimated 558,022 class members. (Pls.' Mot. 17:16–17.) The Automated Call Settlement Class consists of an estimated 9,424 class members. (*Id.* 17:17–18.) The Court therefore finds joinder of all class members is impracticable for the purposes of Rule 23(a)(1) and the numerosity requirement is satisfied. *See Celano*, 242 F.R.D. at 549.

### 3.     Commonality – Rule 23(a)(2)

Under Rule 23(a)(2), the named plaintiff must demonstrate that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). However, "[a]ll questions of fact and law need not be common to satisfy the [commonality] rule." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.*

In this case, Plaintiffs allege that Defendants sent junk faxes, using various aliases, to small business owners soliciting their business. (Pls.' Mot. 2:22–3:7.) Also, Plaintiffs allege that Defendants made prerecorded calls to cell phone numbers regarding preapproval for small business loans. (*Id.* 3:8–16.) Plaintiffs did not consent to these unwanted and unauthorized faxes and calls. (*Id.* 3:18–25, 18:2–5.) Plaintiffs claim the proposed Settlement Class Members were similarly harmed when they received either junk faxes or prerecorded calls by Defendants without their consent in violation of the TCPA. (*Id.* 18:2–5.)

Given this context, the Court finds there are questions of law and fact common to the Settlement Class Members. A common core of issues of fact and law exist as

to whether Defendants' conduct violates TCPA provisions prohibiting companies from sending unsolicited faxes and placing autodialed calls; whether Defendant Narin is directly liable for the faxes sent and calls placed; whether Defendants are vicariously liable for their vendors' conduct; and whether Defendants made prerecorded calls. Accordingly, the commonality requirement is satisfied.

### 4.  Typicality – Rule 23(a)(3)

To satisfy Rule 23(a)(3), the named plaintiff's claims must be typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). The typicality requirement is "permissive" and requires only that the named plaintiff's claims "are reasonably co-extensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). "[C]lass certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Id.* (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990)).

Here, Plaintiffs' junk fax claims are typical of the claims of other Class Members because they arise from the same conduct of Defendants—systematic violations of the TCPA's regulations regarding unsolicited faxes—and are based on the same legal theories. Similarly, the prerecorded call claims all arise from Defendants' common course of advertising their services by placing unwanted, prerecorded calls to Plaintiffs and Class Members. The typicality requirement is therefore satisfied. *See, e.g.*, *Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D. 614, 623 (S.D. Cal. 2015) (finding the typicality requirement satisfied where plaintiff

alleged she received the same or similar unsolicited fax advertisements as those sent to putative class members in violation of the TCPA); *Knutson v. Schwan's Home Serv., Inc.*, No. 3:12-cv-0964-GPC-DHB, 2013 WL 4774763, at \*5 (S.D. Cal. Sep. 5, 2015) (concluding that the typicality requirement was satisfied where plaintiffs asserted they received autodialed and/or prerecorded calls from defendants, "and the proposed class [was] defined to include individuals who received the same type of calls").

### 5. Adequacy – Rule 23(a)(4)

Rule 23(a)(4) requires that the representative plaintiff "will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (citing *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940)). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.* (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

Here, there is no indication that Plaintiffs and their counsel have any interests that are antagonistic to or in conflict with persons in the Settlement Classes they seek to represent. Further, Plaintiffs have a substantial interest in the outcome of this action, since they all received the same unlawful calls and faxes that persons in the Settlement Classes received. (Pls.' Mot. 20:10–12.) Plaintiffs and their counsel appear to have vigorously investigated and litigated this action. (*Id.* 4:11–5:16.) Thus, the interests of Plaintiffs and the Settlement Class Members are aligned. In addition, Plaintiffs' counsel are qualified in class-action litigation as they are active practitioners with substantial experience in consumer law and class action litigation,

1  including matters involving the TCPA. (Pls.' Mot. 20:15–17; Terrell Decl. ¶¶ 2–13,

2  23; Renka Decl. ¶ 4.) Consequently, the Court finds Plaintiffs and their counsel

3  adequately represent the unnamed class members.

4      For the foregoing reasons, the Court provisionally finds the prerequisites for a

5  class action under Rule 23 of the Federal Rules of Civil Procedure have been met for

6  the two Settlement Classes at issue here.

7

8      **B.    Preliminary Fairness Determination**

9      Having certified the Settlement Classes, the Court must next make a

10 preliminary determination of whether the class-action settlement is "fair, reasonable,

11 and adequate" pursuant to Rule 23(e)(2). "It is the settlement taken as a whole, rather

12 than the individual component parts, that must be examined for overall fairness."

13 *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). A court may not

14 "delete, modify or substitute certain provisions" of the settlement; rather, "[t]he

15 settlement must stand or fall in its entirety." *Id.* Relevant factors to this determination

16 include, among others:

17
18     the strength of the plaintiffs' case; the risk, expense, complexity, and
       likely duration of further litigation; the risk of maintaining class action
       status throughout the trial; the amount offered in settlement; the extent
19     of discovery completed and the stage of the proceedings; the experience
       and views of counsel; the presence of a governmental participant; and
20     the reaction of the class members to the proposed settlement.

21 *Id.*; *see also Churchill Vill.*, *L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

22     Preliminary approval of a settlement and notice to the proposed class is

23 appropriate if "the proposed settlement appears to be the product of serious,

24 informed, non-collusive negotiations, has no obvious deficiencies, does not

25 improperly grant preferential treatment to class representatives or segments of the

26 class, and falls within the range of possible approval." *In re Tableware Antitrust*

27 *Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (quotation marks and citations

28 omitted).

Here, the proposed settlement complies with all of these requirements. The Court addresses the relevant factors in further detail below.

### 1. Extent of Discovery Completed and Stage of the Proceedings

The Court assesses the stage of proceedings and the amount of discovery completed to ensure the parties have an adequate appreciation of the merits of the case before reaching a settlement. *See Ontiveros v. Zamora,* 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("A settlement that occurs in an advanced stage of the proceedings indicates the parties carefully investigated the claims before reaching a resolution."). So long as the parties have "sufficient information to make an informed decision about settlement," this factor will weigh in favor of approval. *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1239 (9th Cir. 1998); *see also In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir. 2000) (explaining that a combination of investigation, discovery, and research conducted prior to settlement can provide sufficient information for class counsel to make an informed decision about settlement).

The advanced stage of the proceedings in this case weighs significantly in favor of approval of the settlement. Plaintiffs engaged in extensive pre-certification discovery, including propounding written discovery to Defendants, issuing subpoenas to third parties, and taking the depositions of Defendant Narin and Capital Alliance's Operations Manager, Christina Duncan. (Pls.' Mot. 4:11–15.) Thereafter, Plaintiffs moved for class certification and the Court granted Plaintiffs' motion for class certification. *See Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D. 614, 624–31 (S.D. Cal. 2015). Subsequently, the Parties participated in mediation. (Pls.' Mot. 4:17–18.) Unable to reach an agreement, the Parties participated in a settlement conference before the Honorable Judge William V. Gallo. (*Id.* 4:18–19; Terrell Decl. ¶ 19.) Since the settlement conference, counsel for Plaintiffs and Defendants worked rigorously with one another to reach a compliance plan that will provide appropriate

relief to class members. (Pls.' Mot 5:1–9; Terrell Decl. ¶ 19.) Consequently, the proposed settlement was negotiated after years of litigation, followed by several months of highly contested settlement negotiations, including a mediation and a settlement conference. (Pls.' Mot. 11:24–12:1.) Given the discovery conducted, the stage of the proceedings, and the evidence of significant arms-length negotiations, the Court concludes that this factor weighs significantly in favor of preliminary approval of the settlement.

### 2.      Experience and Views of Counsel

Counsel for the Parties are particularly experienced in the litigation, certification, and settlement of class action cases. (Terrell Decl. ¶¶ 2–13, 24; Renka Decl. ¶ 4.) In negotiating this settlement, Class Counsel had the benefit of years of experience with class actions in general and a familiarity with the facts of this case in particular. (*Id.*) As for their opinions of the settlement, Class Counsel believe the settlement is "fair, reasonable, adequate, and in the best interest of the Settlement Classes as a whole." (Terrell Decl. ¶ 21.) "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). Accordingly, giving the appropriate weight to Class Counsel's recommendation, the Court concludes that this factor also weighs in favor of approval.

### 3.      Amount of the Proposed Settlement

The Settlement Agreement provides only injunctive relief to the Settlement Class Members. (Settlement Agreement § 2.2.) Prior to this litigation, Defendants had a pattern and practice of making prerecorded calls to cell phones and sending junk faxes, both without the prior consent of the recipient and in violation of the TCPA. (Pls.' Mot. 12:15–17.) The Settlement Agreement provides the Settlement Class Members the benefit of an injunction against further violations of the TCPA

by Defendants. (*Id.* 12:17–19; Settlement Agreement § 2.2.B.1–10.) The injunctive relief obtained for the Settlement Classes comports with the purpose of the TCPA because it protects consumers from unwanted and harassing calls and faxes. *See Mims v. Arrow Fin. Servs., LLC*, 132 S.Ct. 740, 745 (2012). Also, the relief is consistent with the injunctive relief approved in TCPA cases involving similar facts. *See Grant v. Capital Mgmt. Servs., L.P.*, No. 10-cv-2471-WQH(BGS), 2014 WL 888665, at *2 (S.D. Cal. Mar. 5, 2014); *see also Kim v. Space Pencil, Inc.*, No. C 11–03796 LB, 2012 WL 5948951, at *6 (N.D. Cal. Nov. 28, 2012.) Consequently, this Court finds the proposed settlement is significant and valuable to the Settlement Class Members.

### 4.      Risk of Further Litigation

"[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n of the City & Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). As explained by the Supreme Court, "[n]aturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation." *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971).

Here, litigation would be lengthy and expensive if this action were to proceed. (Pls.' Mot. 14:5.) Although the Parties have engaged in discovery and extensive motion work, they have not yet completed expert discovery, including the exchange of reports and expert depositions. (*Id.* 14:6–8.) Both the risk of losing a jury trial and the potential for appeal or bankruptcy weigh heavily against continuing towards litigation. (*Id.* 14:10–14.)

One court, in discussing a large proposed settlement in a TCPA action at length, adopted a report concluding that "the average TCPA case carries a 43%

1  chance of success." *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d

2  781, 806 (N.D. Ill. 2015). Plaintiffs and the Class Members would similarly face a

3  substantial risk of being unsuccessful at trial here. Moreover, preparing this matter

4  for trial would indeed be burdensome and expensive. Thus, the Court agrees with the

5  parties that the proposed settlement eliminates litigation risks and ensures that the

6  Settlement Class Members receive substantial and meaningful relief, and this factor

7  weighs in favor of approving the settlement.

8

9            **5.      Reaction of the Class to the Settlement**

10           Plaintiffs, aside from their own views, provide no evidence regarding any

11  putative Settlement Class Members' reactions to the proposed settlement—

12  presumably because no other Class Members have been informed of the proposed

13  settlement. The proposed Class Notice details the time and location of the fairness

14  hearing for this settlement and provides instructions as to how Class Members may

15  obtain more information about the settlement, such as accessing the provided

16  website, calling the specified phone number, or contacting Class Counsel directly.

17  (Settlement Agreement Ex. B.) Also, the Class Notice informs Class Members that

18  they retain their right to bring a lawsuit against Defendants, individually or on behalf

19  of a class of individuals, in order to seek monetary damages. (*Id.*) Accordingly, the

20  Court will further consider this factor at the Fairness Hearing before granting final

21  approval of the settlement.

22           On balance, the Court finds the settlement falls within the range of

23  reasonableness meriting possible final approval. The Court therefore preliminarily

24  approves the settlement and the terms and conditions set forth in the Settlement

25  Agreement, subject to further consideration at the Fairness Hearing.

26  //

27  //

28  //

1

### C.   Proposed Class Notice

For a Rule 23 (b)(2) class, "the court may direct appropriate notice to the class" and individual notice is not mandatory. Fed. R. Civ. P. 23(c)(2)(A); *see Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972) (stating that, in contrast to certification of a (b)(3) class, "notice to the members of a (b)(2) class is not required"). Because the relief requested in a (b)(2) class is prophylactic, enures to the benefit of each class member, and is based on accused conduct that applies uniformly to the class, notice to absent class members and an opportunity to opt out of the class is not required. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) (noting relief sought in a (b)(2) class "perforce affect[s] the entire class at once" and thus, the class is "mandatory" with no opportunity for members to opt out).

Although no notice is required for a Rule 23(b)(2) class action settlement, the Parties in this case have nonetheless agreed to a limited notice program, which takes into account the impracticability of direct notice. (Pls.' Mot. 15:13–21.) Here, the proposed Class Notice describes the litigation, the terms of the Settlement Agreement, and each Class Member's rights and options under the settlement. (Settlement Agreement Ex. B.) As outlined previously, the claims administrator, Heffler Claims Group, will distribute the Class Notice to States' Attorneys' General via U.S. mail for dissemination to the public. (Settlement Agreement § 2.7.) In addition, Heffler will create and maintain a website that provides information, including court documents, regarding the settlement to the Settlement Class. (*Id.*) Also, Heffler will maintain a call center where the Settlement Class can obtain information. (*Id.*) Defendants will be responsible for all costs of notice. (*Id.* § 2.6.)

Having reviewed the proposed Class Notice, the Court finds that the methods and contents of the notice comply with due process and Rule 23 and shall constitute appropriate notice under the circumstances. Therefore, the Court approves the form and content of the proposed Class Notice to be provided to the Settlement Class Members as set forth in Exhibit B of the Settlement Agreement.

III.   **CONCLUSION & ORDER**

In light of the foregoing, the Court **GRANTS** Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Classes (ECF No. 71). Accordingly, the Court hereby **ORDERS** the following:

**(1)**   Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court hereby conditionally certifies the following classes for settlement purposes only:

> A. <u>Junk Fax Class</u>:
>
> All persons or entities in the United States who, on or after November 5, 2009, were sent by or on behalf of Defendants one or more unsolicited advertisements by telephone facsimile machine that bear the business name Community, Community Business Funding, Fast Working Capital, Snap Business Funding, Zoom Capital, Nextday Business Loans, 3DayLoans, Bank Capital, FundQuik, Prompt, or Simple Business Funding.
>
> B. <u>Automated Call Class</u>:
>
> All persons or entities in the United States who, on or after November 5, 2009, received a call on their cellular telephone with a prerecorded voice message from the number 888-364-6330 that was made by or on behalf of Defendants.

**(2)**   The Court hereby appoints Plaintiffs as Class Representatives of the Settlement Classes.

**(3)**   The Court hereby appoints Beth E. Terrell and Terrell Marshall Law Group PLLC, Candice E. Renka and Marquis Aurbach Coffing, and Gary E. Mason, Whitfield Bryson & Mason LLP, as Class Counsel to represent the Settlement Class.

**(4)**   The Court hereby preliminarily approves the Settlement Agreement and the terms and conditions of the settlement set forth therein, subject to further consideration at the Fairness Hearing.

**(5)**   The Court will hold a Fairness Hearing on **November 14, 2016** at **10:30 A.M.**, in the Courtroom of the Honorable Cynthia Bashant, United States District Court for the Southern District of California, Courtroom 4B (4th Floor - Schwartz), 221 West Broadway, San Diego, CA 92101, for the following purposes:

**(a)**   finally determining whether the Settlement Classes meet all applicable requirements of Rule 23 of the Federal Rules of Civil Procedure, and thus,

13cv2654

whether the claims of the Settlement Classes should be certified for purposes of effectuating the settlement; determining whether the proposed settlement of the action on the terms and conditions provided for in the Settlement Agreement is fair, reasonable, and adequate and should be approved by the Court;

(b)     considering any motion of Class Counsel for an award of attorneys' fees and costs;

(c)     considering the motions of Plaintiffs for service awards, if any;

(d)     considering whether the Court should enter the [Proposed] Final Judgment and Order of Dismissal with Prejudice;

(e)     considering whether the releases by the Settlement Class Members as set forth in the Settlement Agreement should be provided; and

(f)     ruling upon such other matters as the Court may deem just and appropriate.

(6)     The Court may adjourn the Fairness Hearing and later reconvene such hearing without further notice to the Settlement Class Members.

(7)     Any motion in support of the settlement must be filed with the Court no later than fourteen days before the date of the Fairness Hearing.

(8)     Any motion for an award of attorneys' fees and costs or Plaintiffs' service awards, if any, must be filed with the Court no later than 45 days before the date of the Fairness Hearing. Any opposition must be filed no later than fourteen days after the motion is filed, and any reply must be filed no later than twenty-eight days after the motion is filed.

(9)     The Court sets the deadline of Class Notice ("Notice Deadline") for 30 days after the date of this Order.

(10)     The Court appoints Heffler Claims Group ("Heffler") to serve as the claims administrator for the settlement.

(11)     Heffler shall carry out all duties set forth in the Settlement Agreement in the manner provided in the Settlement Agreement.

**(12)** The costs and expenses related to claims administration shall be paid by Defendants in accordance with the applicable provisions of the Settlement Agreement.

**(13)** All Settlement Class Members shall be bound by all determinations and judgments in this action concerning the Settlement Agreement, whether favorable or unfavorable to the Settlement Class.

**(14)** Any Settlement Class Member may enter an appearance in this action, at his or her own expense, individually or through counsel. All Settlement Class Members who do not enter an appearance will be represented by Class Counsel.

**(15)** Any Class Member other than the named Plaintiffs did not release their rights to pursue individual or collective damages claims against Defendants. Therefore, the Court will not address the opportunity of Class Members to opt out and will not impose an "Exclusion Deadline."

**(16)** Any Settlement Class Member who desires to object either to the settlement, the award of Class Counsel's fees and costs, or Plaintiffs' service awards, if any, must timely file with the Clerk of this Court and timely serve on the parties' counsel identified below by hand or first-class mail a notice of the objection(s) and proof of membership in the Settlement Class and the grounds for such objections, together with all papers that the Settlement Class Member desires to submit to the Court no later than the Objection Deadline, which is 30 calendar days before the date of the Fairness Hearing. To be considered by the Court, the objection must also contain all of the information listed in Paragraph 17 below. The Court will consider such objection(s) and papers only if such papers are received on or before the Objection Deadline by the Clerk of the Court and by Class Counsel and Defendants' counsel. Such papers must be sent to each of the following persons:

U.S. District Court

Southern District of California

Office of the Clerk

333 West Broadway, Suite 420

San Diego, CA 92101


Terrell Marshall Law Group PLLC

Beth E. Terrell

936 North 34 Street

Suite 300

Seattle, WA 98103


**(17)**   All objections must include: (a) the name of this case and its number: *Bee, Denning, Inc.*, Case No. 13-cv-02654-BAS(WVG) (S.D. Cal.); (b) the objector's full name, telephone number, and address; (c) if represented by counsel, the full name, telephone number, and address of all counsel; (d) all of the reasons for his or her objection; (e) whether the objector intends to appear at the  Fairness Hearing on his or her own behalf or through counsel; (f) a statement that the objector is a class member; and (g) the objector's signature. Any documents supporting the objection must also be attached to the objection. If any testimony is to be given in support of the objection, the names of all persons who will testify must be set forth in the objection.

**(18)**   All objections must be filed with the Clerk and served on the parties' counsel no later than the Objection Deadline. Objections that do not contain all required information or are received after the Objection Deadline will not be considered at the Fairness Hearing.

**(19)**   Attendance at the Fairness Hearing is not necessary; however, any Settlement Class Member wishing to be heard orally with respect to approval of the settlement, the motion for an award of Class Counsel's fees and costs, or the motion for Plaintiffs' service awards, if any, is required to provide written notice of his or

her intention to appear at the Fairness Hearing no later than the Objection Deadline by filing a "Notice of Intention to Appear." The Notice of Intention to Appear must include the Settlement Class Member's name, address, telephone number, and signature and must be filed and served as described in Paragraph 16 of this Order. Settlement Class Members who do not oppose the settlement, the motion for an award of Class Counsel's fees and costs, or the motion for Plaintiffs' service awards, if any, need not take any action to indicate their approval. A person's failure to submit a written objection in accordance with the Objection Deadline and the procedure set forth in the class notices waives any right the person may have to object to the Settlement, the award of Class Counsel's fees and costs, or Plaintiffs' service awards, if any, or to appeal or seek other review of, if issued, the Final Judgment and Order of Dismissal with Prejudice approving the Settlement.

**(20)**   The parties are ordered to carry out the Settlement Agreement in the manner provided in the Settlement Agreement.

**IT IS SO ORDERED.**

**DATED: June 20, 2016**

Hon. Cynthia Bashant
United States District Judge

– 24 –

13cv2654