Beth E. Terrell, CSB #178181
Email: bterrell@terrellmarshall.com
Mary B. Reiten, CSB #203412
Email:  mreiten@terrellmarshall.com
Adrienne D. McEntee, *Admitted Pro Hac Vice*
Email:  amcentee@terrellmarshall.com
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
Telephone:  (206) 816-6603
Facsimile:  (206) 319-5450

[Additional counsel appear on signature page]

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEE, DENNING, INC., d/b/a PRACTICE PERFORMANCE GROUP; and GREGORY CHICK, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CAPITAL ALLIANCE GROUP; and NARIN CHARANVATTANAKIT, <br><br> Defendants. | NO. 3:13-cv-02654-BAS-WVG <br><br> **MEMORANDUM OF POINTS AND AUTHORITY IN SUPPORT OF MOTION FOR FINAL APPROVAL** <br><br> Complaint Filed:  11/5/13 <br><br> DEMAND FOR JURY TRIAL <br><br> Honorable Cynthia Bashant <br><br> DATE:          November 14, 2016 <br> TIME:          10:30 a.m. <br> COURTROOM: 4B, 4th Fl. Schwartz |

MEMORANDUM OF POINTS AND
AUTHORITY IN SUPPORT OF
MOTION FOR FINAL APPROVAL
3:13-cv-02654-BAS-WVG
3:14-cv-02915-JLS-MDD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DANIELA TORMAN, individually
and on behalf of all others similarly
situated,

      v.

CAPITAL ALLIANCE GROUP d/b/a
CAPITAL ALLIANCE d/b/a
BANKCAPITAL d/b/a
BANKCAPITAL DIRECT d/b/a
TRUSTED BANCORP, NARIN
CHARANVATTANAKIT a/k/a
NARAN CHARAN a/k/a CLAYTON
HEATH, and JOHN DOES 1-10,

      Defendants.

NO. 3:14-cv-02915-JLS-MDD

Honorable Janis L. Sammartino

MEMORANDUM OF POINTS AND
AUTHORITY IN SUPPORT OF
MOTION FOR FINAL APPROVAL
3:13-cv-02654-BAS-WVG
3:14-cv-02915-JLS-MDD

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................ 1

II.    STATEMENT OF FACTS ................................................................. 1

    A.    Substantive Allegations ........................................................ 1

    B.    Procedural History ............................................................... 3

III.    THE PROPOSED SETTLEMENT .................................................. 5

    A.    The Settlement Classes ........................................................ 5

    B.    Settlement Relief .................................................................. 6

        1.    Injunctive Relief Parameters .................................... 6

        2.    Class Representative Service Awards ....................... 8

        3.    Attorneys' Costs ....................................................... 8

        4.    No Release by Settlement Class Members ............... 8

        5.    Notice to Settlement Class Members ....................... 8

IV.    ARGUMENT AND AUTHORITY ................................................. 9

    A.    The Settlement Approval Process ....................................... 9

    B.    The Criteria for Settlement Approval Are Satisfied ........ 10

        1.    Extent of Discovery Completed and Stage of the Proceedings ............................................................ 10

        2.    Experience and Views of Counsel ......................... 11

3.   Amount of the Proposed Settlement ...................................... 12

4.   Risk of Further Litigation ...................................... 13

5.   Class Members' Reaction to the Settlement .......................... 14

6.   Extensive, Arm's-Length Negotiations and Lack of Collusion .................................................... 14

C.   Class Notice Has Been Disseminated ............................................. 15

D.   The Settlement Classes Should be Finally Certified........................ 15

V.   CONCLUSION ...................................................................................... 16

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

*Bee, Denning, Inc. v. Capital All. Grp.,*
    310 F.R.D. 614 (S.D. Cal. 2015) ................................................ 4, 11

*Boyd v. Bechtel Corp.,*
    485 F. Supp. 610 (N.D. Cal. 1979).............................................. 11

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992) ..................................................... 9

*Cotton v. Hinton,*
    559 F.2d 1326 (5th Cir. 1977) ................................................... 13

*Grant v. Capital Mgmt. Servs., L.P.,*
    No. 10-cv-2471-WQH (BGS),
    2014 WL 888665 (S.D. Cal. Mar. 5, 2014) ............................... 12

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ............................................... 9, 14

*In re Bluetooth Headset Prods. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2010) .................................................... 14

*In re Capital One Tel. Consumer Prot. Act Litig.,*
    80 F. Supp. 3d 781 (N.D. Ill. 2015)...................................... 13, 14

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000) .................................................... 10

*In re Omnivision Technologies, Inc.,*
    559 F. Supp. 2d 1036 (N.D. Cal. 2007).................................... 11

*In re Online DVD,*
    779 F.3d 934 (9th Cir. 2015) .................................................... 14

MEMORANDUM OF POINTS AND
AUTHORITY IN SUPPORT OF
MOTION FOR FINAL APPROVAL
3:13-cv-02654-BAS-WVG
3:14-cv-02915-JLS-MDD

iii

*Kim v. Space Pencil, Inc.,*
C 11-03796 LB, 2012 WL 5948951 (N.D. Cal. Nov. 28, 2012).......... 12, 13

*Lane v. Facebook,*
696 F.3d 811 (9th Cir. 2012) ........................................................................ 9

*Linney v. Cellular Alaska P'ship,*
151 F.3d 1234 (9th Cir. 1998) ................................................................... 10

*Mims v. Arrow Fin. Servs., LLC,*
132 S.Ct. 740 (2012)................................................................................... 12

*Officers for Justice v. Civil Serv. Comm'n of the City &*
*Cnty. of San Francisco,*
688 F.2d 615 (9th Cir. 1982) ..................................................................... 13

*Ontiveros v. Zamora,*
303 F.R.D. 356 (E.D. Cal. 2014)............................................................... 10

*Smith v. CRST Van Expedited, Inc.,*
No. 10–CV–1116–IEG (WMC)
2013 WL 163293 (S.D. Cal. Jan. 14, 2013) ................................................ 9

*United States v. Armour & Co.,*
402 U.S. 673 (1971) ................................................................................... 13

**FEDERAL RULES**

Fed. R. Civ. P. 23 ...............................................................................4, 9, 12, 15

**FEDERAL STATUTES**

47 U.S.C. §§ 227(a)(4).................................................................................... 7

**OTHER AUTHORITIES**

William B. Rubenstein,
*Newberg on Class Actions* ("Newberg") § 13.1 (5th ed. updated 2015) ..... 9

MEMORANDUM OF POINTS AND
AUTHORITY IN SUPPORT OF
MOTION FOR FINAL APPROVAL
3:13-cv-02654-BAS-WVG
3:14-cv-02915-JLS-MDD

iv

# I. INTRODUCTION

Plaintiffs and Defendants have reached a Settlement that provides injunctive relief to Settlement Class Members who were harassed and annoyed by Defendants' robocalls and junk faxes.  The Settlement requires Defendants to make significant changes to the way in which they obtain and memorialize the receipt of consent from consumers to receive fax transmissions and prerecorded calls on their cell phones; subscribe to the national do-not-call registry; change policies and procedures for training staff regarding the requirements of the TCPA and compliance with the TCPA; and submit to a two-year reporting period in which Defendants are to certify compliance with the injunction on a bi-annual basis.

The Settlement Plaintiffs achieved is fair, adequate, and reasonable, and merits final approval.  Settlement Class Members agree, as none have filed objections.  Accordingly, Plaintiffs request that the Court grant final approval to the Settlement by: (1) approving the Settlement Agreement; (2) determining that the notice described in the Settlement Agreement was provided to the Settlement Classes; (3) finally certifying the Settlement Classes; (4) granting Class Counsel $22,096 in costs; and (5) approving incentive payments of $4,819 each to Plaintiffs Bee, Denning, Inc., Gregory Chick, and Daniela Torman.

## II. STATEMENT OF FACTS

### A.    Substantive Allegations

Defendants Capital Alliance and Narin Charanvattanakit ("Narin") match lenders with small businesses seeking loans.  *See* NO. 3:13-cv-02654-BAS-WVG ("Bee Case"), Dkt. No. 23-1.  Capital Alliance promises a "quick and simple" way for small businesses to get cash.  *Id.*  Capital Alliance funds loans quickly, sometimes within a week of receiving an application.  *Id.*  The loans are generally

MEMORANDUM OF POINTS AND
AUTHORITY IN SUPPORT OF
MOTION FOR FINAL APPROVAL
3:13-cv-02654-BAS-WVG
3:14-cv-02915-JLS-MDD

- 1 -

unsecured and collect interest at rates higher than typical credit card interest of 12% to 14%. *Id.* At one time, Defendants employed forty-seven sales people, all of whom primarily fielded inbound phone calls from prospective borrowers. *Id.*

To obtain customers, Defendants retained vendor Absolute Fax to solicit business through junk fascimiles. *See Bee Case*, Dkt. No. 23-1. Absolute Fax touts itself as a "global fax broadcast provider" that "focuses on fax marketing and nothing else." *Id.* Capital Alliance also engages in mass telemarketing, using an autodialer to send prerecorded advertisements to millions of prospective customers. *Id.* Defendants paid Message Communications, a telemarketing company that leaves prerecorded messages, "for marketing leads" it generated through robocalling campaigns. *Id.*

Defendant Narin is heavily involved in Capital Alliance's operations, including its junk fax and telemarketing activities. *See Bee Case*, Dkt. No. 23-1. As CEO of Capital Alliance, Narin manages daily operations, directs sales activities and motivates Capital Alliance's employees. *Id.* Narin's personal involvement extends to Capital Alliance's use of junk faxing and robocalling to solicit new business. *Id.* Narin is the person at Capital Alliance who knows the details regarding Capital Alliance's junk fax and telemarketing efforts. *Id.* Indeed, Narin was the point person at Capital Alliance regarding the company's junk fax marketing efforts. *Id.* He was also the point person regarding Capital Alliance's robocalling telemarketing campaigns and personally provided the content for the prerecorded messages used by Message Communications. *Id.*

Plaintiffs allege that Defendants have sent junk faxes to 558,022 small business owners, including Plaintiff Bee, soliciting their business. Bee Case, Dkt. No. 23-1; *see also* Dkt. No. 71-2 at ¶ 15. Capital Alliance is not identified on these faxes. Instead, Capital Alliance uses a number of aliases to disguise the fact

MEMORANDUM OF POINTS AND AUTHORITY IN SUPPORT OF MOTION FOR FINAL APPROVAL

3:13-cv-02654-BAS-WVG
3:14-cv-02915-JLS-MDD

that Capital Alliance has caused the fax to be transmitted.  Bee Case, Dkt. No. 23-1.  These aliases include "Community," "Community Business Funding," "Fast Working Capital," "Snap Business Funding," "Zoom Capital," "Nextday Business Loans," "3DayLoans," "Bank Capital," "FundQuik," "Prompt," and "Simple Business Funding." *Id*.  Despite the disguise, the faxes sent using these names are easily traceable to Capital Alliance.  *Id*.

In addition to sending junk faxes to obtain business, Defendants also engage in illegal robocalling.  Bee Case, Dkt. No. 23-1.  Based on information obtained by Plaintiffs obtained by subpoena, Defendants made prerecorded calls to 9,424 unique cell phone numbers. Dkt. No. 71-2 at ¶ 15.  For example, on December 6, 2013, Plaintiff Chick received a telephone call from Defendants, or on Defendants' behalf, with a prerecorded message about preapproval for a business loan.  *Id*.  Similarly, Plaintiff Torman received four prerecorded messages from Defendants, or on Defendants' behalf, soliciting Defendants' loans.  *See* NO. 3:14-cv-02915-JLS-MDD ("Torman Case"), Dkt. No. 1.

**B.    Procedural History**

Plaintiff Bee, Denning, Inc. initiated this class action lawsuit against Defendant Capital Alliance Group on November 5, 2013 on behalf of herself and other similarly situated individuals who received unwanted, unauthorized, faxes advertising a short term business loan.  Bee Case, Dkt. No. 1.  One month later, Plaintiff amended the complaint to add as a Defendant Narin Charanvattanakit, as well as Plaintiff Gregory Chick, on behalf of himself and other similarly situated individuals who received unwanted, unauthorized prerecorded messages on their cellular telephones.  *Id.*, Dkt. No. 6.

In 2014, Plaintiff Daniela Torman brought a separate class action lawsuit against Defendants in the District of Nevada.  On July 27, 2015, upon stipulation

- 3 -

MEMORANDUM OF POINTS AND
AUTHORITY IN SUPPORT OF
MOTION FOR FINAL APPROVAL
3:13-cv-02654-BAS-WVG
3:14-cv-02915-JLS-MDD

of the Parties, the Nevada District Court ordered that the Torman Case be transferred to the "Southern District of California pursuant to the Ninth Circuit first-to-file rule because it is substantially similar to" the *Bee* Case. *See* Torman Case, Dkt. No. 22. On September 29, 2015, Plaintiff Torman and the Defendants jointly moved this Court to consolidate the Torman and Bee Cases. *Id.*, Dkt. No. 31. The Court initially denied a joint motion to consolidate the cases, but later granted a renewed motion to consolidate.

On September 5, 2015, after having engaged in extensive discovery, including propounding written discovery to Defendants, issuing subpoenas to third parties, and taking the depositions of Defendant Narin and Capital Alliance's Operations Manager, Christina Duncan, the Plaintiffs in the Bee Case moved to certify two classes under Rule 23(b)(3). *See* Bee Case, Dkt. No. 23-1. The Court amended the class definition of the "Automated Call Class" and certified that class, along with a "Junk Fax Class." *See Bee, Denning, Inc. v. Capital All. Grp.,* 310 F.R.D. 614, 619 (S.D. Cal. 2015).

Subsequently, on December 10, 2015, the Parties participated in mediation. *Id.* Unable to reach an agreement, the Parties participated in a settlement conference before Magistrate Judge Gallo on April 27, 2016. Dkt. No. 71-2 at ¶ 19. As part of those discussions, Plaintiffs reviewed Defendants' financial information. *Id.* ¶ 17. Based on this review, Plaintiffs determined that Defendants had insufficient finances to provide financial relief to proposed class members. *Id.* Moreover, even if there were available assets, they would first need to satisfy hundreds of thousands of dollars in liens before any relief could go to class members. *Id.*

Despite the stark reality of Defendants' finances, with the Court's help, the Parties explored other ways to provide relief to class members during the

MEMORANDUM OF POINTS AND AUTHORITY IN SUPPORT OF MOTION FOR FINAL APPROVAL
3:13-cv-02654-BAS-WVG
3:14-cv-02915-JLS-MDD

settlement conferences.  Dkt. No. 71-2 at ¶ 19.  Although Defendants' finances made it impossible to provide monetary relief to class members, the Parties and the Court determined that class members would benefit from injunctive relief that required Defendants and any successors to make significant changes to their autodialing practices.  *Id.*  Since the settlement conference, counsel for Plaintiffs have worked rigorously with Defendants to reach a Settlement, comprised largely of a compliance plan that will provide appropriate relief to class members.  *See* Dkt. No. 71-3 ("Settlement Agreement").

### III. THE PROPOSED SETTLEMENT

**A.    The Settlement Classes**

The Settlement's terms were summarized in Plaintiffs' preliminary approval papers (Dkts. Nos. 71-1, 71-2, 71-3), are contained in the Settlement Agreement (Dkt. No. 71-3), and are again summarized below for the Court's convenience.  Settlement Class Members fall within two "Settlement Classes" defined as:

Junk Fax Class:

All persons or entities in the United States who, on or after November 5, 2009, were sent by or on behalf of Defendants one or more unsolicited advertisements by telephone facsimile machine that bear the business name Community, Community Business Funding, Fast Working Capital, Snap Business Funding, Zoom Capital, Nextday Business Loans, 3DayLoans, Bank Capital, FundQuik, Prompt, or Simple Business Funding.

Automated Call Class:

All persons or entities in the United States who, on or after November 5, 2009, received a call on their cellular telephone with a prerecorded voice message from the number 888-364-6330 that was made by or on behalf of Defendants.

**B.      Settlement Relief**

      1.      <u>Injunctive Relief Parameters</u>

The Settlement Agreement provides injunctive relief to the Settlement Classes that requires Defendants to stop practices that were previously part of their business model.  The injunctive relief consists of significant changes to the way in which Defendants obtain and memorialize the receipt of consent from consumers to receive fax transmissions and prerecorded calls on their cell phones; requiring Defendants to subscribe to the national do-not-call registry; changes to policies and procedures for training staff with respect to the requirements of the TCPA and compliance with the TCPA; and submission to a two-year reporting period in which Defendants are to certify compliance with the injunction on a bi-annual basis.  Settlement Agreement, § D.  Specifically:

      a.      Defendants and Defendants' successors shall establish written procedures for TCPA compliance;

      b.      Defendants and Defendants' successors shall conduct annual training sessions directed to TCPA compliance;

      c.      Defendants and Defendants' successors shall maintain a list of telephone numbers of persons who request not to be contacted;

      d.      Defendants and Defendants' successors shall subscribe to a version of the national do-not-call registry obtained no more than three months prior to the date any call is made (with records documenting such compliance);

      e.      Defendants and Defendants' successors shall establish internal processes to ensure that Defendants and Defendants' successors do not sell, rent, lease, purchase or use the do-not-call database in any manner except in compliance with TCPA regulations;

MEMORANDUM OF POINTS AND
AUTHORITY IN SUPPORT OF
MOTION FOR FINAL APPROVAL
3:13-cv-02654-BAS-WVG
3:14-cv-02915-JLS-MDD

f.    Defendants and Defendants' successors shall scrub for cellular telephones before making autodialed calls or calls made with an artificial voice or use or prerecorded messages;

g.    Defendants and Defendants' successors shall not call cellular telephones prior to receipt of the express written permission of the intended recipient, including the intended recipient's signature;

h.    All prerecorded messages, whether delivered by automated dialing equipment or not, must identify Capital Alliance or any successor entity, and the specific "d/b/a" as the entity responsible for initiating the call, along with the telephone number that can be used during normal business hours to ask not to be called again;

i.    All fax transmissions that include "unsolicited advertisements" as defined in 47 U.S.C. §§ 227(a)(4) must be preceded by the receipt of the express written permission of the intended recipient, including the intended recipient's signature;

j.    Defendants and Defendants' successors must maintain records demonstrating that recipients have provided such express permission to send fax advertisements; and

k.    Defendants shall make a bi-annual report to Class Counsel outlining their compliance with the TCPA injunction and any issues that may have arisen.  Defendants agree to submit copies of any putative individual or class action lawsuits filed against them and asserting one or more claims pursuant to the TCPA during the reporting period to Class Counsel beginning 6 months from the date that this agreement is signed and every 6 months thereafter until expiration of the injunction.  Reports from Defendants are due on November 18, 2016, May 18, 2017, November 18, 2017, and May 18, 2018.

2.      Class Representative Service Awards

The Settlement Agreement also provides that each of the three Plaintiffs to receive $4,819 (collectively, $14,457) for his or her statutory damages and services as representatives of the Classes.  Settlement Agreement ¶ 2.3.  These awards will compensate Plaintiffs for their time and effort and for the risk they undertook in prosecuting this case, as further set forth in Plaintiffs' Motion for Costs and Incentive Awards.  *See* Dkt. No. 76-1.

3.      Attorneys' Costs

Defendants have agreed to pay Class Counsel's costs in the amount of twenty-two thousand ninety-six dollars ($22,096).  Settlement Agreement ¶ 2.4.  This amount, which does not include the attorneys' fees Class Counsel have incurred (and which are waived under the Settlement Agreement), is reasonable and necessary in light of the lengthy litigation, as further set forth in Plaintiffs' Motion for Costs and Incentive Awards.  *See* Dkt. No. 76-1.

4.      No Release by Settlement Class Members

Although the named Plaintiffs have released all of their claims against Defendants, Class Members do not release their rights to pursue individual or collective damages claims against Defendants.

5.      Notice to Settlement Class Members

The Settlement Agreement requires Defendants, at Defendants' expense, to hire Heffler Claims Group ("Heffler") to (1) provide Class Notice via U.S. mail to States' Attorneys' General for dissemination to the public; (2) create and maintain a website that provides information, including court documents, regarding the settlement to the Settlement Classes; and (3) create and maintain a call center where the Settlement Classes can obtain information.  Settlement Agreement at ¶¶ 2.6, 2.7.

MEMORANDUM OF POINTS AND
AUTHORITY IN SUPPORT OF
MOTION FOR FINAL APPROVAL
3:13-cv-02654-BAS-WVG
3:14-cv-02915-JLS-MDD

# IV. ARGUMENT AND AUTHORITY

## A.     The Settlement Approval Process

As a matter of "express public policy," federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *see also* William B. Rubenstein, *Newberg on Class Actions* ("Newberg") § 13.1 (5th ed. updated 2015) (citing cases).

A court may approve a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  The Court must "review[] the substance of the settlement . . . to ensure that it is 'fair, adequate, and free of collusion.'" *Lane v. Facebook*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)). The Court is "not to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, nor is the proposed settlement to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Smith v. CRST Van Expedited, Inc.*, No. 10–CV–1116–IEG (WMC) 2013 WL 163293, at *2 (S.D. Cal. Jan. 14, 2013) (internal quotation marks and citation omitted). "In making this appraisal, courts have broad discretion to consider a range of factors such as [1] the strength of the plaintiff's case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a

MEMORANDUM OF POINTS AND
AUTHORITY IN SUPPORT OF
MOTION FOR FINAL APPROVAL
3:13-cv-02654-BAS-WVG
3:14-cv-02915-JLS-MDD

government participant; and [8] the reaction of the class members to the proposed settlement." *Id.* at *2–3 (internal quotation marks and citation omitted) (finding the proposed settlement "fair, adequate, and free of collusion" on the grounds that "the settlement is the product of arms-length negotiations by experienced counsel before a respected mediator, reached after and in light of years of litigation and ample discovery into the asserted claims").

As described below in conjunction with the relevant factors, the Settlement is fair, reasonable, and more than adequate.

**B.     The Criteria for Settlement Approval Are Satisfied**

1.     Extent of Discovery Completed and Stage of the Proceedings

The Court assesses the stage of proceedings and the amount of discovery completed to ensure the parties have an adequate appreciation of the merits of the case before reaching a settlement. *See Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("A settlement that occurs in an advanced stage of the proceedings indicates the parties carefully investigated the claims before reaching a resolution."). So long as the parties have "sufficient information to make an informed decision about settlement," this factor will weigh in favor of approval. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (explaining that a combination of investigation, discovery, and research conducted prior to settlement can provide sufficient information for class counsel to make an informed decision about settlement).

Plaintiffs engaged in extensive pre-certification discovery, including propounding written discovery to Defendants, issuing subpoenas to third parties, and taking the depositions of Defendant Narin and Capital Alliance's Operations Manager, Christina Duncan.  Dkt. No. 71-2 at ¶14.  Plaintiffs next moved for

MEMORANDUM OF POINTS AND
AUTHORITY IN SUPPORT OF
MOTION FOR FINAL APPROVAL
3:13-cv-02654-BAS-WVG
3:14-cv-02915-JLS-MDD

- 10 -

1    class certification.  *See Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D. 614,
2    624–31 (S.D. Cal. 2015).  Subsequently, the Parties participated in mediation.
3    Dkt. No. 71-2 at ¶19.  Unable to reach an agreement, the Parties participated in a
4    settlement conference before the Honorable Judge William V. Gallo. *Id.*
5    Afterward, counsel for Plaintiffs and Defendants worked rigorously with one
6    another to reach a compliance plan that will provide appropriate relief to class
7    members, as memorialized in the Settlement Agreement.  *Id.* at ¶¶ 19-20.  At the
8    preliminary approval stage, the Court concluded that this factor weighs
9    significantly in favor of approval of the Settlement.  Dkt. No. 74 at 15:4-16:7.
10   Plaintiffs request that the Court reach the same conclusion now.

      2.    <u>Experience and Views of Counsel</u>

12         The endorsement of the Settlement as being fair, reasonable, and adequate
13   by qualified and well-informed counsel endorse weighs in favor of the Court
14   approving the Settlement.  *See In re Omnivision Technologies, Inc.*, 559 F. Supp.
15   2d 1036, 1043 (N.D. Cal. 2007) (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp.
16   610, 622 (N.D. Cal. 1979)) ("The recommendations of plaintiffs' counsel should
17   be given a presumption of reasonableness."); *Linney v. Cellular Alaska P'ship*,
18   No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997 ("The
19   involvement of experienced class action counsel and the fact that the settlement
20   agreement was reached in arm's length negotiations, after relevant discovery had
21   taken place create a presumption that the agreement is fair.").

22         Counsel for the Parties are particularly experienced in the litigation,
23   certification, and settlement of class action cases.  *See* Dkt. Nos. 71-2 at ¶¶ 2–13;
24   71-4 at ¶ 4.  In negotiating this settlement, Class Counsel had the benefit of years
25   of experience with class actions in general and a familiarity with the facts of this
26   case in particular.  *Id.*  At the preliminary approval stage, the Court concluded

MEMORANDUM OF POINTS AND
AUTHORITY IN SUPPORT OF
MOTION FOR FINAL APPROVAL
3:13-cv-02654-BAS-WVG
3:14-cv-02915-JLS-MDD

1    that this factor weighs in favor of approval of the Settlement.  Dkt. No. 74 at

2    16:9-20.  Plaintiffs ask that the Court reach the same conclusion here.

3              3.    <u>Amount of the Proposed Settlement</u>

4         The Settlement Agreement, which requires Defendants to change its

5    business practices, provides significant value to the Settlement Class Members.

6    Prior to this litigation, Defendants had a pattern and practice of making

7    prerecorded calls to cell phones without prior consent, and a pattern and practice

8    of sending junk faxes advertising their products, in violation of the TCPA.  The

9    benefit the Settlement Agreement provides to Members of the Settlement Classes

10   is an injunction against further violations of the TCPA.  In addition to other

11   requirements, during the two-year period in which the injunction is in effect,

12   Defendants will implement policies and procedures and training geared toward

13   ensuring TCPA compliance, and will obtain written consent before Defendants or

14   their successors place calls to cell phones, or send faxes with unsolicited

15   advertisements.

16        The injunctive relief obtained for the Settlement Classes comports with the

17   purpose of the TCPA — to protect consumers from unwanted and harassing calls.

18   *See Mims v. Arrow Fin. Servs., LLC*, 132 S.Ct. 740, 745 (2012).  Moreover, the

19   relief is consistent with the injunctive relief approved in *Grant v. Capital Mgmt.*

20   *Servs., L.P.*, No. 10-cv-2471-WQH (BGS), 2014 WL 888665 (S.D. Cal. Mar. 5,

21   2014), a TCPA case involving similar facts.  There, the district court approved a

22   Rule 23(b)(2) settlement that required the defendant to abide by injunctive terms

23   that are similar to those here.  *Id.* at *2.  Specifically, the defendant was required

24   to adopt identifying and blocking technology it did not previously employ to

25   ensure it did not make unlawful calls, and to provide declarations under perjury

26   every six months confirming compliance with the injunction.  *Id; see also Kim v.*

27                                    MEMORANDUM OF POINTS AND
                                      AUTHORITY IN SUPPORT OF
28                                    MOTION FOR FINAL APPROVAL
                                      3:13-cv-02654-BAS-WVG
            - 12 -                    3:14-cv-02915-JLS-MDD

*Space Pencil, Inc.*, C 11-03796 LB, 2012 WL 5948951, at *6 (N.D. Cal. Nov. 28, 2012) (granting final approval of settlement agreement under which class members only received injunctive relief, but class members were not bound by settlement agreement).

At preliminary approval, the Court found the proposed Settlement to be both significant and valuable to the Settlement Class Members.  Likewise, here, Plaintiffs ask that the Court find this factor weighs in support of final approval.

4.     Risk of Further Litigation

"[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'"  *Officers for Justice v. Civil Serv. Comm'n of the City & Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).  As explained by the Supreme Court, "[n]aturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation."  *United States v. Armour & Co*., 402 U.S. 673, 681 (1971).

Here, litigation would be lengthy and expensive if this action were to proceed.  Although the Parties engaged in formal informal discovery and extensive motion work, including Plaintiffs' motion for class certification, they have not completed expert discovery, including the exchange of reports and expert depositions.  The step following expert discovery is trial, which is scheduled to begin in February 2017, nearly a year from now.  There is always a risk of losing a jury trial.  And, even if Plaintiffs did prevail at trial, any judgment could be reversed on appeal (or subject to bankruptcy).

As the Court noted in its Preliminary Approval Order, "the average TCPA case carries a 43% chance of success."  Dkt. No. 74 at 17:27-18:2 (citing *In re*

*Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 806 (N.D. Ill. 2015). Because the proposed Settlement eliminates litigation risks and ensures that the Settlement Class Members receive substantial and meaningful relief, this factor weighs in favor of final approval.

     5.   <u>Class Members' Reaction to the Settlement</u>

     The deadline for Class Members to object to the Settlement has passed, and none of the Class Members have filed objections.

     6.   <u>Extensive, Arm's-Length Negotiations and Lack of Collusion</u>

     In addition to considering the factors set forth above, the Court's must ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (internal quotes and citations omitted); *see also In re Online DVD*, 779 F.3d 934, 944 (9th Cir. 2015) (noting settlements in class actions "present unique due process concerns for absent class members," including the risk that class counsel "may collude with the defendants") (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2010)).

     Here, the proposed settlement was negotiated after years of litigation, followed by several months of highly contested settlement negotiations, including a mediation and settlement conference. Counsel for the Parties are particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases. Dkt. No. 71-2 at ¶¶ 2-13. In negotiating this settlement, Class Counsel had the benefit of years of experience with class actions in general and a familiarity with the facts of this case in particular. *Id.* Moreover, the Parties benefitted from the Court's active participation throughout the negotiation

MEMORANDUM OF POINTS AND
AUTHORITY IN SUPPORT OF
MOTION FOR FINAL APPROVAL
3:13-cv-02654-BAS-WVG
3:14-cv-02915-JLS-MDD

process. The fact that Plaintiffs achieved an excellent result for the Settlement Class despite facing significant hurdles is a testament to the fair nature of the proposed Settlement.

## C.  Class Notice Has Been Disseminated

This Court has already determined that although no notice is required for a Rule 23(b)(2) class action settlement, the notice program in the Settlement Agreement, which takes into account the impracticability of direct notice, meets the requirements of due process and Rule 23, and constitutes appropriate notice under the circumstances. Dkt. No. 74 at 19:1-28. The Settlement Agreement required Defendants, at Defendants' expense, to hire Heffler Claims Group ("Heffler") to (1) provide Class Notice via U.S. mail to States' Attorneys' General for dissemination to the public; (2) create and maintain a website that provides information, including court documents, regarding the settlement to the Settlement Classes; and (3) create and maintain a call center where the Settlement Classes can obtain information. Settlement Agreement at ¶¶ 2.6-2.7. Heffler has fully implemented the notice plan approved by this Court. *See* Declaration of Lisa A. Luciotti of Heffler Claims Group.

## D.  The Settlement Classes Should be Finally Certified

In its Preliminary Approval Order, this Court provisionally granted class certification. Dkt. No. 74 at 7:11-14:6. For all the reasons set forth in Plaintiffs' preliminary approval briefing, and the Preliminary Approval Order, the Court should finally certify the Settlement Classes.

MEMORANDUM OF POINTS AND
AUTHORITY IN SUPPORT OF
MOTION FOR FINAL APPROVAL
3:13-cv-02654-BAS-WVG
3:14-cv-02915-JLS-MDD

# V. CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order (1) approving the Settlement Agreement; (2) determining that notice, while not necessary, was provided to the Settlement Classes pursuant to the Settlement Agreement; (3) finally certifying the Settlement Classes; (4) granting Class Counsel $22,096 in costs; and (5) approving incentive payments of $4,819 each to Plaintiffs Bee, Denning, Inc., Gregory Chick, and Daniela Torman.

RESPECTFULLY SUBMITTED AND DATED this 28th day of October, 2016.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Adrienne D. McEntee
    Beth E. Terrell, CSB #178181
    Email: bterrell@terrellmarshall.com
    Mary B. Reiten, CSB #203412
    Email: mreiten@terrellmarshall.com
    Adrienne D. McEntee, *Admitted Pro Hac Vice*
    Email: amcentee@terrellmarshall.com
    936 North 34th Street, Suite 300
    Seattle, Washington 98103-8869
    Telephone: (206) 816-6603
    Facsimile: (206) 319-5450

    Stefan Coleman
    Email: law@stefancoleman.com
    LAW OFFICES OF STEFAN COLEMAN
    201 South Biscayne Boulevard, 28th Floor
    Miami, Florida 33131
    Telephone: (877) 333-9427
    Facsimile: (888) 498-8946

    *Attorneys for Plaintiffs*

MEMORANDUM OF POINTS AND
AUTHORITY IN SUPPORT OF
MOTION FOR FINAL APPROVAL

- 16 -

3:13-cv-02654-BAS-WVG
3:14-cv-02915-JLS-MDD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I, Adrienne D. McEntee, hereby certify that on October 28, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Gene S. Stone, CSB #162112
Email: gstone@homan-stone.com
HOMAN & STONE
12 North Fifth Street
Redlands, California 92373
Telephone: (909) 307-9380
Facsimile: (909) 793-0210

Janine C. Prupas
Email:  jprupas@swlaw.com
SNELL & WILMER, L.L.P.
50 West Liberty Street, Suite 510
Reno, Nevada 89501
Telephone:  (775) 785-5440
Facsimile:  (775) 785-5441

*Attorneys for Defendants*

Scott A. Marquis
Email:  smarquis@maclaw.com
Candice E. Renka
Email:  crenka@maclaw.com
MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816

MEMORANDUM OF POINTS AND
AUTHORITY IN SUPPORT OF
MOTION FOR FINAL APPROVAL
- 17 -               3:13-cv-02654-BAS-WVG
                     3:14-cv-02915-JLS-MDD

Gary E. Mason
Email:  gmason@wbmllp.com
WHITFIELD, BRYSON & MASON, LLP
1625 Massachusetts Avenue NW, Suite 605
Washington, DC 20036
Telephone: (202) 429-2290

*Attorneys for Plaintiff Daniela Torman*

DATED this 28th day of October, 2016.

TERRELL MARSHALL LAW GROUP PLLC


By: /s/ Adrienne D. McEntee
Adrienne D. McEntee, *Admitted Pro Hac Vice*
Email: amcentee@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
Telephone:  (206) 816-6603
Facsimile:  (206) 319-5450

*Attorneys for Plaintiffs*

MEMORANDUM OF POINTS AND
AUTHORITY IN SUPPORT OF
MOTION FOR FINAL APPROVAL
3:13-cv-02654-BAS-WVG
3:14-cv-02915-JLS-MDD

- 18 -